**LINCOLN COUNTY STONE COMPANY, INC. and Missouri Land Reclamation Commission, Appellants,**

v.

**Ray and Marydel KOENIG, Respondents.**

**No. ED 77492.**

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 2000.

Timothy D. Duggan, Jefferson City, Michael E. Kaemmerer, Chesterfield, for appellants.

David A. Taylor, Jefferson City, for respondents.

CLIFFORD H. AHRENS, Judge.

Lincoln County Stone Company ("Lincoln County Stone") and the Missouri Land Reclamation Commission ("Commission") appeal a judgment of the Lincoln County Circuit Court ("Circuit Court") reversing an order of the Commission which granted a land reclamation permit to Lincoln County Stone. The basis for the Circuit Court's order was a permit hearing conducted upon request of neighbors Ray and Marydel Koenig ("the Koenigs") and David and Pam Eisenbath.[1] On appeal, Lincoln County Stone and the Commission argue the Commission did not err in granting the permit application of Lincoln County Stone as the evidence demonstrated Lincoln County Stone was in compliance with all applicable laws and regulations. We reverse and remand.

Lincoln County Stone is a corporation in the business of mining limestone. It was incorporated on March 13, 1998 and is wholly owned by the J.H. Berra Holding Company ("Holding Company"). In addition to owning Lincoln County Stone, the Holding Company also owns J.H. Berra Construction Company ("Construction Company") and Bellefontaine Quarries ("Bellefontaine"). Bellefontaine operates limestone quarries, and the Construction Company constructs sewer systems, develops land, constructs highways, and clears construction sites. John Berra, Jr. is the president of the Holding Company, the Construction Company, Bellefontaine, and Lincoln County Stone. Joseph Nicpon ("Nicpon") is the vice-president of Bellefontaine and Lincoln County Stone; his duties include obtaining the proper permits for Lincoln County Stone.

On March 21, 1998, Lincoln County Stone submitted to the Commission an application to operate a limestone quarry on land in Lincoln County. The proposed quarry would be located adjacent to property owned by the Koenigs and the Eisenbaths. The Koenigs operate a 750–tree orchard which is pollinated by a hive of bees and rent out a house located on their property. On April 13, 1998, pursuant to section 444.773.3 RSMo (Supp.1999), the Koenigs and the Eisenbaths requested a hearing to challenge the issuance of the permit. Mohsen Dkhili, a Land Reclamation Specialist with the Department of Natural Resources ("DNR") whose duties include making recommendations to the Commission on requests for hearings, later recommended the Commission deny the Koenig's and Eisenbath's request for a hearing. The Commission, however, granted their request for a hearing.

Later in April, after beginning construction on a scale house and construction of the haul road, Nicpon spoke with Thomas Seigel, an engineer with the Missouri Department of Natural Resources ("DNR"), who recommended Lincoln County Stone apply for a land disturbance permit. Believing Lincoln County Stone's initial construction would not involve land disturbance of greater than five acres, the minimal amount of disturbed land to necessitate a permit, Nicpon did not file an application for a land disturbance permit until April 29, 1998. On April 30, 1998, Lincoln County Stone was issued a Notice of Violation for failure to obtain a storm water permit for land disturbance prior to beginning construction. Lincoln County Stone discontinued operations at the site. In response to Nicpon's application, the DNR issued a land disturbance permit to Lincoln County Stone around May 5, 1998.

Pursuant to section 444.789.3 RSMo (Supp.1999), the Commission appointed attorney Tom Jones to serve as hearing officer. Following a hearing, the officer

---

1. The Eisenbaths are no longer parties to this appeal.

presented his proposed findings to the Commission in which he recommended against issuing the permit. The Commission chose to reject the proposed findings and instead issued an order granting Lincoln County Stone a permit to operate their limestone quarry. The Koenigs and Eisenbaths appealed the Commission's decision to the Circuit Court. The Circuit Court entered a summary judgment order reversing the order of the Commission and rescinding Lincoln County Stone's permit. Lincoln County Stone and the Commission appeal from the Circuit Court's order.

In their point relied on, Lincoln County Stone and the Commission contend the Circuit Court erred in substituting its discretion for that of the Commission when it rescinded the Commission's issuance of a permit. In particular, Lincoln County Stone argues section 444.773.3 RSMo (Supp.1999) requires a finding of noncompliance with applicable laws and regulations to warrant denial of a land reclamation permit and the evidence demonstrated Lincoln County Stone was in compliance with all applicable laws and regulations. Consequently, Lincoln County Stone and the Commission argue the Commission's decision to grant Lincoln County Stone a permit should have been upheld.

██ Although this case is an appeal from the Circuit Court's judgment, we review the agency's findings and conclusions rather than the Circuit Court's judgment.[2] *State ex rel. Drury Displays, Inc. v. City of Olivette,* 976 S.W.2d 634, 635 (Mo.App. 1998). The case at bar deals solely with issues of statutory construction. Statutory construction is a matter of law, not fact. *Zitzman v. Lohman,* 917 S.W.2d 617, 618 (Mo.App.1996). An agency's interpretation generally is to be given great weight. *Burlington Northern R.R. v. Director of Revenue,* 785 S.W.2d 272, 273 (Mo.1990).

However, when an administrative agency's decision is based on the agency's interpretations of law, the reviewing court must exercise unrestricted, independent judgment and correct erroneous interpretations. *Id.*

The purpose of Missouri's Land Reclamation Act ("the Act") is to strike a balance between the surface mining of minerals and the reclamation of land subjected to surface disturbance by that mining. Section 444.762 RSMo (Supp.1999). As such, the duties of the Commission include examining and passing on all applications and plans submitted by potential mine operators for the method of operation of the proposed mines and for the reclamation and conservation of the area of land affected by the operations. Section 444.767(3) RSMo (Supp.1999). Any operator desiring to engage in surface mining shall make a written application to the director for a permit. Section 444.772.1 RSMo (Supp. 1999). The director shall promptly investigate the application and make a recommendation to the commission as to whether the permit should be issued or denied. Section 444.773.1 RSMo (Supp.1999). If the director's recommendation is for issuance of the permit, the director shall issue the permit without a hearing except that upon petition from any person whose health, safety, or livelihood is affected by noncompliance with any applicable laws or regulations, a hearing may be held. Section 444.773.3 RSMo (Supp.1999). The hearing officer shall make recommendations to the Commission, but the Commission shall make the final decision. Section 444.789 RSMo (Supp.1999).

The dispute between the Commission and the Circuit Court centered around the phrase "is affected by noncompliance" in section 444.773.3. The Commission

---

**2.** Rule 84.05(e) provides that when the Circuit Court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the Circuit Court, the party aggrieved by the agency decision shall file the appellant's brief and the party aggrieved by the Circuit Court's decision shall prepare the respondent's brief. Due to the expedited appeal in the present case, Lincoln County Stone and the Commission retained the procedural status of appellants.

adopted a narrow construction of the wording; it stated the statute required an "active, current, [and] ongoing noncompliance" and explained to consider past and/or future acts of noncompliance would be to ignore the clear language of the statute. The Circuit Court, however, held "[t]he Commission was remiss in not examining sister companies or any other person connected to Lincoln [County Stone]" for acts of noncompliance. The Circuit Court noted the anomaly of not considering past violations of subsidiary companies, noting "[c]ertainly Lincoln [County Stone] would have no noncompliance history having just been born."

Both the Commission and the Circuit Court conceded section 444.773.3 is designed as a standing requirement to permit the Koenigs to request a hearing. However, both the Commission and the Circuit Court also utilized the statute as a substantive standard to evaluate issuance of a permit. Whether section 444.773.3 is merely procedural or both a procedural and substantive standard is not a question before this court on appeal. We leave the question of section 444.773.3's function for another day and evaluate the language in light of the Commission's decision, namely that the effect of noncompliance upon the "health, safety or livelihood" of a hearing petitioner constitutes a substantive consideration in the issuance of a land reclamation permit.

This case presents an issue of first impression as to the meaning of section 444.773.3 and the requirements of the Act. We must first resolve whether the Act requires the Commission to look at the noncompliance of sister companies and related corporations in determining whether the hearing petitioner's health, safety or livelihood is affected. We must then consider whether the Commission should look to future and past acts of noncompliance as well as present acts of noncompliance in ascertaining the effect upon the hearing petitioner's health, safety or livelihood.

The case law surrounding the Act is sparse; however, we are guided by tenets of statutory construction. The primary rule of statutory construction is to ascertain the lawmaker's intent from the language used and give effect to that intent, while considering the words used in their plain and ordinary meaning. *Trumble v. Director of Revenue*, 985 S.W.2d 815, 819 (Mo.App.1998). Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized. *State v. Sledd*, 949 S.W.2d 643, 646 (Mo.App.1997). Statutes should be construed in such a way as to avoid unreasonable, oppressive or absurd results. *Id.* at 645.

We first address whether the Act requires the Commission to look at the noncompliance of related corporations in determining whether the hearing petitioner's health, safety or livelihood is affected. The Act does not explicitly require the noncompliance of related corporations to be considered. However, the primary focus of statutory construction is to ascertain the intent of the legislature. *State ex rel. Whiteco v. Bowers*, 965 S.W.2d 203, 207 (Mo.App.1998). To discover the legislature's intent, we must examine the words used in the statute, the context in which the words are used, and the problem the legislature sought to address with the statute's enactment. *Id.* We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Id.* A statute must not be interpreted narrowly if such an interpretation would defeat the purpose of the statute. *Id.* It is presumed the legislature intended that every word, clause, sentence and provision of a statute have effect; conversely, it will be presumed the legislature did not insert idle verbiage or superfluous language in a statute. *Hyde Park Housing Partnership v. Director of Revenue*, 850 S.W.2d 82, 84 (Mo.1993).

The application for a permit must include whether the applicant or any per-

son associated with the applicant holds or has held any other permit under sections 444.500 to 444.789 and an identification of such permits. Section 444.772.2(4) RSMo (Supp.1999); 10 CSR 40–10.020(2)(A). The term "person" may extend and be applied to bodies corporate as well as individuals. Section 1.020 RSMo (Supp.1999). Consequently, the applicant for a permit must include in its application any permits held under sections 444.500 to 444.789 by persons as well as corporations associated with the applicant. Moreover, it is significant that the statute requires not only disclosure of the permit, but also an *identification* of the permit. Presuming the legislature intended this verb to have meaning, we conclude the legislature was concerned with the details and particulars of previously and currently held permits of related companies as well as their mere existence.

In interpreting statutes, this court must both strive to implement the policy of the legislature and harmonize all provisions of the statute. *20th & Main Redevelopment Partnership v. Kelley*, 774 S.W.2d 139, 141 (Mo.1989). The legislature has declared the policy of the Act, and of the state of Missouri, includes "protect[ing] and perpetuat[ing] the taxable value of property…and protect[ing] and promot[ing] the health, safety and general welfare" of Missouri citizens. Section 444.762 RSMo (Supp.1999). This broad policy demanding protection for property and for the health, safety and the general welfare of Missouri citizens coupled with the demand that a permit applicant include and identify other permits held by "associated" persons results in the conclusion the legislature intended for the Commission to consider the permits and concomitant acts of noncompliance held by "associated" persons and related corporations when determining whether a hearing petitioner's health, safety, or livelihood is affected.

■ Applying this logic to the case at bar, we find that permits held by Bellefontaine, the Construction Company, and the Holding Company should be considered by the Commission in determining whether the health, safety or livelihood of hearing petitioners is affected by noncompliance thereof. Bellefontaine, the Construction Company, and Lincoln County Stone are all wholly owned subsidiaries of the Holding Company, and John Berra, Jr. acts as president for all four companies. As such, Bellefontaine, the Construction Company and the Holding Company are sufficiently "associated" with Lincoln County Stone as to warrant consideration by the Commission of permits held by these entities under section 444.500 to 444.789 and noncompliance thereunder in the Lincoln County Stone application process. To hold differently would allow companies to simply form a "new" corporation or legal entity to avoid commission scrutiny of their current permits and history of compliance in evaluating the effect upon a hearing petitioner's health, safety or livelihood.

■ We must now consider whether the Commission should look to future and past acts of noncompliance as well as present acts of noncompliance in ascertaining the affect upon a hearing petitioner's health, safety or livelihood. The Commission focused upon the term "is affected" and explained that if the legislature intended for past or future acts of noncompliance to be considered, the legislature would have used wording such as "has been affected" or "will be affected." The Circuit Court, however, dismissed the Commission's reasoning and found a "very clear intent" by the legislature for the Commission to look for prior violations and noncompliance.

If one were to interpret section 444.773.3 to permit consideration of past acts of noncompliance as being dispositive in determining whether hearing petitioner's health, safety or livelihood was affected, a permit seeker could never put to rest past noncompliance and would be denied a permit despite remoteness of the noncompliance or efforts at rectification. Conversely, if section 444.773.3 were inter-

preted only to pertain to current noncompliance, a permit seeker could preclude a hearing petitioner from bringing suit by simply complying with applicable laws and regulations at the time the hearing petitioner requested a hearing.[3] Statutes should be considered in such a way as to avoid unreasonable, oppressive or absurd results. *Sledd,* 949 S.W.2d at 646. As both interpretations lead to unreasonable results, we look to the interpretation of a similar law to effectuate the perceived intent of the legislature.

In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the United States Supreme Court interpreted language of the Clean Water Act which authorized private citizen suits against any person "alleged to be in violation of" the conditions of either a federal or a state NPDES permit. *Id.* at 53, 108 S.Ct. 376. The Supreme Court rejected a reading which would have permitted bringing suit on the basis of wholly past violations and instead opted for an interpretation that required the citizen plaintiff to allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. *Id.* at 57, 108 S.Ct. 376.

We find the United States Supreme Court's analysis in *Gwaltney* to be instructive. The phrase "is affected by noncompliance" could be too easily circumvented if it applied only to current violations. However, in order to effectuate the present tense of the verb, isolated past violations, in and of themselves, should not be a litmus test requiring denial of the permit. In addition, interpreting the language of the Act in a similar fashion to the federal statute is buttressed by language in the Act's penalty regulations contemplating a similar strategy. The regulations provide

for an increase in financial penalties for violations, in certain situations, if "the operator has a history of noncompliance." 10 CSR 40–10.070(7)(C)(3)(C). The adjustment, or increase, is based upon the similarity of the previous violation(s), how recently the previous violation(s) were committed, the number of the previous violation(s) and the operator's response to abating the previous violation(s). *Id.*

Mindful of the United States Supreme Court's interpretation of the Clean Water Act and the penalty assessment mechanism in the Land Reclamation Act, we hold past acts of noncompliance, in and of themselves, are an insufficient basis to find that a hearing petitioner's health, safety or livelihood is affected. However, if a hearing petitioner demonstrates either present acts of noncompliance or a reasonable likelihood that the permit seeker or associated persons or corporations will be in noncompliance in the future, such a showing will satisfy the "noncompliance" requirement of section 444.773.3. In determining whether a reasonable likelihood of noncompliance will exist in the future, the Commission may look to past acts of noncompliance, but only to the extent they suggest a reasonable likelihood of future acts of noncompliance.

■ The Koenigs have also filed an application for attorney's fees with this court. Previously, the Koenigs filed an application for payment of fees and expenses with the Circuit Court. The record does not reveal any action by the Circuit Court in response to this motion. A prevailing party in a civil action on appeal from an agency proceeding shall submit an application for fees and expenses to the court. Section 536.087.4 RSMo (1994). However, when the state appeals the underlying merits of an adversary proceed-

---

**3.** We note presenting evidence that the mere existence of a quarry or other mine will denigrate property values is insufficient to satisfy the requirements of section 444.773.3. A hearing petitioner must show what the language of the statute requires, namely a *non-*

*compliance* with applicable laws and regulations by the permit seeker or "associated" company or person. Any remedy to prevent the operation of a mine short of noncompliance is outside the purview of the Act.

ing, no decision on the application for fees and other expenses shall be made until the underlying merits of the case have been finally determined pursuant to the appeal. *Id.* Because the underlying merits of the case at bar have not been finally determined pursuant to this appeal, a decision on the fee application would not be ripe for adjudication. Therefore, we dismiss the motion without prejudice.

We reverse the judgment of the Circuit Court and remand this case to the Circuit Court with instructions to remand the case to the Commission for proceedings consistent with this opinion.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J. concurs.