**CITY OF ST. LOUIS, Appellant,**

v.

**Henry CERNICEK, et al., Respondents.**

**No. ED 83830.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 27, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 9, 2004.

Application for Transfer Denied
Oct. 26, 2004.

Patricia A. Hageman, City Counselor, Edward J. Hanlon, Deputy City Counselor, Carl W. Yates III, Associate City Counselor, St. Louis, MO, Dennis J. Henigan, Jonathan E. Lowy, Elizabeth S. Haile, Legal Action Project, Washington, DC, for Appellant.

Jack J. Cavanagh, Paul J. Vaporean, Cavanagh & Hartweger, LLC, Alan C. Kohn, Jennifer S. Forsythe, Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP, Terese A. Drew, Daniel T. Rabbitt, Rabbitt, Pitzer & Snodgrass, P.C., Thomas E. Wack, John W. Rogers, Bryan Cave LLP, G. Keith Phoenix, Kenneth J. Brennan, Sandberg, Phoenix & von Gontard, P.C., Gregory J. Minana, Carrie J. Bechtold, Blackwell, Sanders, Peper, Martin LLP, Gerard T. Noce, Noce & Buckley, L.L.C., Lawrence S. Denk, Foley & Mansfield, P.L.L.P., St. Louis, MO; James P. Dorr, Lisa S. Simmons, Sarah L. Olson, Wildman, Harrold, Allen & Dixon, LLP, Chicago, IL; Timothy A. Bumann, Budd Larner, P.C., Atlanta, GA; Thomas E. Fennell, Michael L. Rice, Jones, Day, Reavis & Pogue, Dallas, TX; Lawrence S. Greenwald, Lawrence Fletcher–Hill, Catherine A. Bledsoe, Gordon, Fleinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD; John F. Renzulli, Leonard S. Rosenbaum, Renzulli, Pisciotti & Renzulli, Robert L. Joyce, Wilson, Elser, Mosokowitz, Edelman & Dicker, Anne Cohen, Debevoise & Plimpton, New York, NY; William M. Griffin, Jonann Coniglio, Friday, Eldredge & Clark, Little Rock, AR; Robert C. Tarics, Michael Branisa, Michael Zomcik, Tarics & Carrington, Houston, TX; Jeffrey S. Nelson, Shook Hardy & Bacon, L.L.P., Kansas City, MO, for Respondents.

Before GARY M. GAERTNER, Sr., P.J., MARY R. RUSSELL, J. and SHERRI B. SULLIVAN, J.

PER CURIAM.

Appellant, the City of St. Louis ("the City"), appeals from the judgment of the Circuit Court of St. Louis County granting the motion to dismiss of respondents, Henry Cernicek, et al ("Defendants"). We affirm.

The City originally filed this suit in the Circuit Court of the City of St. Louis on May 24, 1999. On August 15, 2000, the City filed its first amended complaint.

Defendants are manufacturers, promoters, marketers, distributors, and sellers of firearms. The City brought suit to obtain relief from Defendants' willful, deliberate, reckless and negligent marketing and distribution of firearms. The City alleges that Defendants manufacture, distribute, and sell thousands of firearms in a manner such that those guns can be eventually purchased by juveniles, criminals, and other prohibited persons for use in the commission of crimes.

The City's first amended complaint alleges the following facts to support the counts on which it proceeds against Defendants. The City argues the widespread availability and misuse of guns by juveniles, felons, and other unauthorized users is an immense national problem, constituting an ongoing public nuisance and causing the City direct harm. Between 1994 and 1999, the City's police department seized 18,766 guns on the streets of the City. The

City also provides a list showing the number of each manufacturer's guns recovered.

The City alleges the gun violence in the City "is fueled by the easy movement of firearms from the legal marketplace to unauthorized and illegal users through an illegal secondary firearms market." The City alleges that Defendants market and distribute their guns to states with weaker gun control laws while knowing those states will be supply sources for states with stronger laws. As evidence, the City refers to a congressional report that shows that fifty-three percent of guns used in the commission of a crime in Missouri were supplied from out of state. This same report showed that Kansas was the source of 693 guns traced to crimes committed in Missouri while Missouri was the source of only twelve guns traced to crimes in Kansas.

The City alleges Defendants knew or should have known that their products were being diverted into illegal markets and could have taken action to control or prevent the diversion, but did not do so. The methods through which the City alleges guns were being diverted into illegal markets are: 1) "straw purchases" where a purchaser buys a gun from a licensed dealer for a person who is not authorized to purchase the gun; 2) multiple sales where a purchaser buys more than one gun at a time over a short period of time from a licensed dealer with the intention of later selling or transferring the gun to a person who is not qualified to purchase guns; 3) sales by so-called "kitchen table dealers" who are licensed gun dealers who do not sell from a retail store, but nevertheless sell guns without completing background checks on purchasers or complying with other reporting requirements; 4) the stealing of guns from retail dealers or other licensees who have failed to provide adequate security; and 5) sales at gun shows where unlicensed gun sellers are not required to perform a background check on prospective purchasers.

The City argues firearm tracing reports on crime guns prepared by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") are publicly available and show Defendants knew or should have known a substantial percentage of firearms used to inflict harm on St. Louis by violence are obtained through the illegitimate secondary market. Further, the City contends gun manufacturers know how many of their guns are used in crimes because ATF contacts them in conducting traces of all of those guns. These ATF reports also indicate that a "very high percentage of crime guns that have been successfully traced have been funneled through a small set of federally licensed dealers."

The City included in its first amended petition a 1996 statement by Robert Hass, the former Senior Vice–President of Marketing and Sales for Smith & Wesson, in which he stated

[Smith & Wesson] and the industry are also aware that the black market in handguns is not simply the result of stolen guns but is due to the seepage of guns into the illicit market from multiple thousands of unsupervised federal handgun licensees.... I am familiar with the distribution and marketing practices of the [sic] all of the principal U.S. handgun manufacturers and wholesale distributors and none of them, to my knowledge, take additional steps, beyond determining the possession of a federal handgun license, to investigate, screen or supervise the wholesale distributors and retail outlets that sell their products to insure that their products are distributed responsibly.

Toward the end of controlling the flow of guns into the illegal market, the City sug-

gests, *inter alia,* Defendants could: 1) adequately investigate, monitor, supervise, regulate and/or screen the distributors and dealers; 2) conduct research or heed existing research and implement strategies to prevent the flow of firearms to the unlawful secondary market; 3) establish a system of distribution through which they retain better control of their products; 4) require distributors and dealers to certify their compliance with all firearms laws and regulations; 5) require distributors and dealers to maintain records of trace requests from law enforcement agencies and to report those requests to the manufacturers; and 6) require distributors and dealers to institute effective training, monitoring, and sanctions practices to enforce these requirements. The City argues the Defendants have not instituted these or similar precautionary measures because they do not want to decrease sales of guns, even if those guns are likely falling into the hands of criminals.

The City further alleges that Defendants' willful, deliberate, reckless, and negligent distribution of guns is exacerbated by the unsafe design of their guns, which causes thousands of unintentional shooting deaths and injuries every year. The City maintains the gun industry has failed to introduce feasible safety features including personalized technology, chamber loaded indicators, or magazine disconnect safeties, all of which would promote safety and save lives.

The City contends it was reasonably foreseeable that Defendants' guns would fall into the hands of unauthorized users. Even so, the City states Defendants failed to adequately warn customers of the dangers and failed to inform customers or distributors of available devices and mea-

sures that could prevent or decrease these dangers.

The City seeks attorneys' fees, costs, compensatory damages for Defendants' action and inaction constituting a public nuisance, and punitive damages for complete indifference and conscious disregard for health and welfare in promoting a public nuisance. The City requests the same relief for its nuisance abatement claim, its negligent design claim, its negligent warning claim, its negligent distribution, sales, and marketing claim, its product liability design claim, and its product liability warning claim. For the unjust enrichment claim, the City requests only compensatory damages, attorneys' fees, and costs.

Defendant Cernicek filed a renewed motion to dismiss [1] and submitted an affidavit of his residence and the Manufacturer Defendants filed a motion to transfer to St. Louis County with affidavits detailing their lack of connection to the City of St. Louis. The trial court granted the motion and the case was transferred to the Circuit Court of St. Louis County on March 1, 2002.

On October 5, 2000, the Defendants had filed in the City a motion to dismiss the City's first amended complaint. On August 2, 2002, after venue had been transferred to St. Louis County, Defendants filed a renewed motion in the Circuit Court of St. Louis County arguing the City's first amended petition failed to state a claim upon which relief may be granted or was otherwise barred by Missouri law.

The trial court entered judgment on October 15, 2003, dismissing the first amended petition as to the manufacturer defendants for failure to state a claim. On October 24, 2003, the trial court entered an amended order and judgment, which dis-

**1.** The motion was renewed because the case had been removed to the United States District Court for the Eastern District of Missouri, but was remanded back to the Circuit Court of the City of St. Louis.

missed the first amended petition as to all of the non-manufacturer defendants. A second amended order and judgment vacated judgment as to Bryco Arms and B.L. Jennings because they had filed for bankruptcy. The trial court expressly determined "that there [was] no just reason for delay in entering judgment in this case as to fewer than all of the parties."

A motion to dismiss is an attack on a plaintiff's pleadings. *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 463 (Mo.banc 2001). Our review of a motion to dismiss for failure to state a claim upon which relief may be granted is exclusively a test of the adequacy of a plaintiff's petition. *Id.* at 464 (*quoting Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo.banc 1993)). We assume plaintiff's averments are true and liberally grant plaintiff all reasonable inferences therefrom. *Id.* We do not determine whether the facts alleged are credible or persuasive. *Id.* We examine the petition simply to determine whether the alleged facts meet the elements of a recognized cause of action, or of a cause that might be adopted in a particular case. *Id.* We will, however, affirm the dismissal if it can be sustained on any ground supported by the motion, even if the trial court did not rely on that ground. *McCarthy v. Peterson*, 121 S.W.3d 240, 243 (Mo.App. E.D.2003).

As a threshold matter, we will first determine whether the City's claim is barred by Section 21.750 RSMo (Supp.2003).[2] This statute was amended to add subsections 4–6 to the existent subsections 1–3, and the amended subsections became effective October 12, 2003, three days before the trial court entered its order and judgment.

Section 21.750 states:

1. The general assembly hereby occupies and preempts the entire field of legislation touching in any way firearms, components, ammunition and supplies to the complete exclusion of any order, ordinance or regulation by any political subdivision of this state. Any existing or future orders, ordinances or regulations in this field are hereby and shall be null and void except as provided in subsection 3 of this section.

2. No county, city, town, village, municipality, or other political subdivision of this state shall adopt any order, ordinance or regulation concerning in any way the sale, purchase, purchase delay, transfer, ownership, use, keeping, possession, bearing, transportation, licensing, permit, registration, taxation other than sales and compensating use taxes or other controls on firearms, components, ammunition, and supplies except as provided in subsection 3 of this section. Section 21.750(1–2) RSMo (2000).

The 2003 amendment to Section 21.750 included the following pertinent subsections:

4. The lawful design, marketing, manufacture, distribution, or sale of firearms or ammunition to the public is not an abnormally dangerous activity and does not constitute a public or private nuisance.

5. No county, city, town, village or any other political subdivision nor the state shall bring suit or have any right to recover against any firearms or ammunition manufacturer, trade association or dealer for damages, abatement or injunctive relief resulting from or relating to the lawful design, manufacture, marketing, distribution, or sale of firearms or ammunition to the public. This subsection shall apply to any suit pending as of the effective date of this section, as well as any suit which may be brought in

**2.** All statutory references are to RSMo (Supp. 2003) unless otherwise indicated.

the future. Provided, however, that nothing in this section shall restrict the rights of individual citizens to recover for injury or death caused by the negligent or defective design or manufacture of firearms or ammunition. Section 21.750(4–5).

Defendant Henry Cernicek filed a motion to dismiss for failure to state a claim on October 16, 2003, the day after the trial court issued its original Order and Judgment. Defendant Cernicek was the first to specifically argue that subsections 4 and 5 prohibit the City from bringing these claims. The Amended Order and Judgment, finding that the reasons for dismissing the first amended petition as to the manufacturer defendants apply equally to non-manufacturer defendants, dismissed the case as to the non-manufacturer defendants, including Cernicek, and restated and reaffirmed its original Order and Judgment. The trial court, in its Second Amended Order and Judgment, noted that "[t]he parties have also called the attention of the Court to the new [section] 21.750," but it found that it need not address the amended statute with its "broader and more encompassing provisions" because it has already ruled on the basis of the preexisting subsections 1 and 2 that the statute expressly reserved the regulation of the manufacture and sale of firearms to the Missouri Legislature. Therefore, although it did not rely on them, the Second Amended Order and Judgment shows that subsections 4 and 5 were before the trial court when it ruled on the motion to dismiss as to all parties.

█ The trial court also noted in the Second Amended Order and Judgment that "[t]he City has suggested that new [section] 21.750 may be unconstitutional as applied to this case," although it is not evident in the record where the City made this suggestion. The record shows the issue of the constitutionality of 21.750(4–6) first arises in a footnote in the Manufacturer Respondents' brief and then more fully in the City's reply brief, where the City argues section 21.750(4–6) is unconstitutional because its application violates the "open courts" provision of the Missouri Constitution and its retroactive application "impairs St. Louis' vested rights in violation of the Missouri Constitution" and "violates the prohibition on special or local laws in the Missouri Constitution."

█ To preserve constitutional issues, one must raise them at the first available opportunity. *Hollis v. Blevins,* 926 S.W.2d 683 (Mo.banc 1996) *quoting Land Clearance for Redevelopment Authority v. Kansas University Endowment Ass'n,* 805 S.W.2d 173, 176 (Mo.banc 1991). Attacks on the constitutionality of a statute are of such importance that the record regarding such issues should be fully developed and not raised as an afterthought in a post-trial motion or on appeal. *Id.* at 684.

Because the City did not raise the issue of the constitutionality of 21.750(4–6) before the trial court, the issue is deemed waived, and we cannot address it. The City's claim that 21.750(4–6) is void was not properly preserved for the same reason.

█ The last question regarding 21.750(4–6) is whether it properly applies to the City's claims. The City argues subsections 4 and 5 do not bar the suit in this case. The City claims that it is suing Defendants for their "tortious" conduct and that the terms "tortious" and "unlawful" are interchangeable. As a result, they argue this suit is not barred by the statute, which only prohibits suits relating to the "lawful" design, manufacturing, marketing, distribution, and sale.

In construing statutes, our main aim is to ascertain the intent of the legislature from the language used in the statute and to give effect to that intent whenever possible. *Headrick v. Jackes–Evans Mfg. Co.,*

108 S.W.3d 114, 117 (Mo.App. E.D.2003). We presume the Legislature did not intend to enact an absurd law, and favor a statutory construction that avoids unjust or unreasonable results. *Id.* Further, we presume the legislature intended that every word, clause, sentence, and provision in a statute has effect. *Lincoln County Stone Co., Inc. v. Koenig,* 21 S.W.3d 142, 146 (Mo.App. E.D.2000). The converse is also true, which means we presume the legislature did not insert idle verbiage or superfluous language in a statute. *Id.*

If we were to accept the City's contention that this statute only prohibits suits based on the lawful design, manufacturing, marketing, distribution, and sale of firearms and not the unlawful or tortious design, manufacturing, marketing, distribution, and sale, subsection 4 would have no meaning. Subsection 4 specifically states that these activities do not constitute abnormally dangerous activities and do not constitute a public or private nuisance. Public and private nuisance are both torts. Restatement (Second) of Torts Section 821A. Abnormally dangerous activities are associated with strict liability, which is also a concept of tort law. Restatement (Second) of Torts Sections 519 and 520. In other words, according to the City, the lawful design, manufacturing, marketing, distribution, and sale of firearms activities are not tortious or unlawful. It is obvious that a lawful activity is not unlawful or tortious, two words that the City contends are interchangeable. Thus, subsection 4 would be mere idle verbiage if we were to accept The City's argument. We find the legislature did not intend such a redundant result. Instead, the enactment of this statute seems to be in response to suits like this one, which attempt to apply theories of tort liability to the significantly regulated industry of manufacturers, distributors, and dealers of firearms. Therefore, we find the City's claims are prohibited by subsections 4 and 5 of section 21.750.

Having found the legislature has prohibited this type of suit in Missouri, we need not address the merits of this suit.

Judgment affirmed.