**Opinion issued March 31, 2022**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-20-00249-CV

_____

**HOLLY GAIL CRAMPTON, Appellant**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 17-CV-1455**

---

## MEMORANDUM OPINION

In this case, the Texas Commission for Lawyer Discipline ("the Commission") brought a disciplinary proceeding against attorney Holly Gail Crampton, seeking to sanction her for professional misconduct. After a bench trial,

the trial court found that Crampton violated five disciplinary rules and suspended Crampton from the practice of law for two years, with one year probated.

In five issues on appeal, Crampton argues that (1) the Commission failed to present legally and factually sufficient evidence to support the trial court's findings of fact and conclusions of law that she committed professional misconduct; (2) the Texas Rules of Disciplinary Procedure, which impose a preponderance of the evidence burden on the Commission in disciplinary proceedings, violate her due process rights because disciplinary proceedings are quasi-criminal in nature; (3) the Commission should not be allowed to claim that its attorneys are entitled to absolute immunity "in their capacity as prosecutors," but also argue that the burden of proof should only be preponderance of the evidence and not a heightened burden; (4) the Commission, in obtaining judgment against Crampton in this proceeding, relied upon an unenforceable and void order in a prior disciplinary proceeding; and (5) the prior disciplinary order was not "entered of record" until a date after the order required Crampton to take certain actions, and therefore it was not capable of enforcement.

We modify the judgment of the trial court and affirm as modified.

**Background**

*A.    The Wiles Representation: April 2011 Through September 2014*

In 2009, Wade Wiles purchased a truck. Several weeks later, he had his truck towed from his house in Seymour, Texas, to Vernon Auto Group, located in Wichita Falls, because the truck would not start. While the dealership had possession of Wiles' truck, it allegedly allowed an employee to test drive the truck by taking it to the employee's house overnight. The employee drove back to the dealership the next day and got into a car accident on the way to work. Wiles' truck was damaged in the accident.

In 2011, Crampton was practicing law in north Texas, and she had an office in Wichita Falls. Wiles hired her in April 2011 to represent him in his case against Vernon Auto Group and its affiliates, and Crampton filed an original petition on his behalf in July 2011. Wiles asserted claims for DTPA violations, fraud, and negligence. Over the next two years, the parties participated in discovery.

As the case progressed toward trial, the trial court inquired whether the parties had attempted mediation and informed the parties that they would not receive a trial date until mediation occurred. The parties agreed on a mediator, and a mediation was scheduled for early June 2013. Wiles did not attend despite being informed of

the mediation.[1] After waiting for over an hour, representatives of Vernon Auto Group left. The parties were unable to re-schedule a mediation, although the mediator made several attempts to do so.

Crampton testified that the attorney-client relationship with Wiles began to deteriorate, and it became increasingly obvious to her that a court order would likely be necessary to compel mediation. In March or April 2014, she told Wiles that she no longer wished to represent him and that he needed to find a new attorney. She reached out to several local attorneys to see if they would take Wiles' case, but she was not able to find anyone. Crampton met with Wiles several times after this point, and she never changed her position that she was no longer representing him. However, Wiles "was continuing to behave as if he didn't really understand that [Crampton] wasn't his lawyer, that he had to find another lawyer." Crampton met with him on July 23, 2014, and informed him that she had searched for another attorney to take his case but was unsuccessful, she was no longer his attorney, and he needed to take his client file. Wiles indicated that he understood, but he refused

---

[1] In his deposition, Wiles testified that he asked Crampton about mediation, but it was repeatedly rescheduled. Then one day, while he was working on the roof of the restaurant where he was employed, Crampton called him and asked if he could be in Wichita Falls "in 15 minutes" for mediation. The restaurant where Wiles worked was approximately forty-five minutes away from Wichita Falls. Wiles started to drive to Wichita Falls, but when he was about ten miles away, Crampton called him again and told him that the mediation would be rescheduled. Wiles testified that he had "no knowledge" of the mediation until Crampton called him and asked if he "could be there in 15 minutes."

to take his file, telling Crampton that he would find another attorney and she should send his file directly to whomever he hired.

Wiles could not remember the date of this meeting, but he did recall that he and Crampton spoke about her decision to cease representing him. According to Wiles, Crampton told him that she "had a couple of lawyers that she could talk to," and his understanding was that if she could not find another attorney to represent him, she would continue representing him.[2] He agreed that he spoke with Crampton on the phone around the end of September 2014 and she told him that she had terminated the attorney-client relationship and he needed to find new counsel. He did not make any efforts to find a new lawyer in 2014 because he had "just pretty much given up on the deal." In his recollection, Crampton did not offer to send him his file when he spoke with her in September 2014.

## B. *Prior Disciplinary Proceedings*

Unrelated to her representation of Wiles, Crampton filed a civil rights lawsuit on behalf of other clients against the Texas Department of Family & Protective Services and three of its employees. *See Crampton v. Comm'n for Lawyer Discipline*, 545 S.W.3d 593, 596 (Tex. App.—El Paso 2016, pet. denied), *cert. denied*, 138 S. Ct. 2661 (2018). Crampton informed her clients that the case was

---

[2] Wiles also testified that after Crampton told him that she was no longer going to represent him, he sent her a text message asking if she had been able to find another attorney. He stated that she "just said she was never able to find one."

likely to be removed to federal court, and if that happened, she "would do 'absolutely nothing'" and the case would probably be dismissed. *Id.* Crampton did not inform her clients that the reason she would do "nothing" in federal court was because she had been disbarred from practicing in the United States District Court for the Northern District of Texas since 1999 due to her failure to pay a monetary sanction. *Id.* at 597. Her clients' case was removed to federal court, Crampton took no action on her clients' behalf, and their case was dismissed. *Id.* Crampton's clients initiated a grievance against her with the State Bar of Texas. *Id.* at 598. Crampton elected to have the matter heard by a district court, and the Texas Supreme Court appointed the Honorable William Mazur, then an active district judge, to preside over the proceeding. *Id.* at 599.

In December 2014, after granting the Commission's motion for summary judgment, Judge Mazur signed a judgment finding that Crampton violated three disciplinary rules and committed professional misconduct ("the 2014 Judgment"). *Id.* As a sanction, Judge Mazur suspended Crampton from the practice of law for two years, from January 1, 2015, through December 31, 2016. In addition to requiring Crampton to pay restitution to her former clients, the 2014 Judgment also required her to take several actions by January 1, 2015, including: (1) notifying each of her current clients in writing of her suspension; (2) returning any files, papers, unearned money, or other property in her possession to her clients; and (3) notifying

6

in writing every judge of each court in which she had any matter pending of the terms of the 2014 Judgment.

Judge Mazur's last day in office as an active district judge was December 31, 2014. *Id.* Several weeks later, Crampton's counsel contacted the Texas Supreme Court and requested the appointment of a new judge to hear pending post-judgment motions. *Id.* The Texas Supreme Court did so and "rescinded" Judge Mazur's appointment. *Id.* Crampton appealed the 2014 Judgment to the El Paso Court of Appeals, which affirmed the judgment entered against her. *Id.* at 607.

## C.    *Conclusion of the Wiles Case and the Underlying Disciplinary Proceeding*

Crampton agreed that she did not inform Wiles of her suspension either verbally or in writing; she did not send him his file before January 1, 2015; and she did not notify the presiding judge of the court in which Wiles' case against Vernon Auto Group was pending of the terms of the 2014 Judgment. Wiles also testified that Crampton never informed him of her suspension.

On December 10, 2015, during Crampton's suspension, the trial court in which Wiles' case against Vernon Auto Group was pending sent counsel of record—including Crampton, who was still listed as Wiles' counsel of record—a notice of intent to dismiss the case for want of prosecution. The notice stated that the matter was set for hearing on January 14, 2016, and the case would be dismissed unless a verified motion to retain was filed at least seven days before the hearing. Crampton

7

testified that she immediately sent a copy of this notice to Wiles, but she did not do anything else because Wiles was no longer her client, and she did not believe she had any further responsibilities to him. Crampton agreed that she did not correspond with the trial court "regarding [her] representation of Mr. Wiles at that time." Because no motion to retain the case on the docket was filed, the trial court dismissed the case for want of prosecution on February 3, 2016. The trial court sent notice of the dismissal to Crampton.

Crampton did not send the order dismissing the case to Wiles.[3] She did not try to find another attorney to assist Wiles in reinstating his case. She agreed that she never filed a motion to withdraw as Wiles' counsel and that no substitution of attorney was ever filed in Wiles' case. She testified that she did not file a motion to withdraw because Wichita Falls has a small legal community, and she did not want to prejudice Wiles in his case by giving an indication that he was having difficulty with his attorney. Crampton further agreed that she was the attorney of record for Wiles' case "from the onset to the disposition of the case." However, she testified that, as of the end of September 2014, Wiles was no longer a current client of hers.

---

[3]     Wiles could not recall if he received the notice of intent to dismiss and the order of the dismissal in the mail, or if the first time he received these documents was when Crampton sent him his client file in September 2016. He testified that Crampton did not contact him concerning either the notice or the dismissal order.

After the case was dismissed, Crampton next communicated with Wiles when he contacted her on August 24, 2016, and asked about his case. As a result of that conversation, Crampton sent Wiles his client file on September 1 or September 2. This was the first time Crampton sent Wiles his file. After consulting with another attorney about potentially pursuing a legal malpractice claim against Crampton, Wiles filed a grievance with the State Bar of Texas and the underlying disciplinary proceeding began.

At trial, Crampton testified in person and Wiles testified by deposition. After the trial, the Commission prepared findings of fact and conclusions of law, and the trial court signed these findings and conclusions. The trial court found:

1. Holly G. Crampton (hereinafter referred to as "Respondent") is an attorney licensed to practice law in Texas and is a member of the State Bar of Texas.

2. Respondent's [principal] place of practice at the time of the filing of the above styled matter was Galveston County, Texas.

3. In April 2011, Wade Wiles hired Respondent to represent him in a civil action against an auto group and its related entities.

4. In representing Wade Wiles, Respondent neglected the legal matter entrusted to her.

7. Respondent failed to explain the circumstances of her Partially Probated Suspension [the 2014 Judgment] to the extent reasonably necessary to permit Wade Wiles to make informed decisions regarding the representation.

8. Respondent failed to withdraw from representing Wade Wiles when the representation would result in violation of rules of professional conduct.

9

9. Respondent violated a disciplinary judgment against her in cause no 179,451-A, 30th Judicial District Court Wichita County, Texas [the 2014 Judgment] by failing to return to Wade Wiles his client file.

10. Respondent violated [the 2014 Judgment] by failing to notify Wade Wiles in writing, of her suspension under said cause number.

11. Respondent violated [the 2014 Judgment] by failing to notify the 30th Judicial District Court Wichita County, Texas in writing, of her suspension under said cause number.

The Commission prepared two additional findings of fact—Finding 5 and Finding 6—but the trial judge handwrote an "X" over the numbers at the beginning of these findings and signed his initials.[4] In five conclusions of law, the trial court concluded that Crampton violated Disciplinary Rules 1.01(b)(1), 1.03(a), 1.03(b), 1.15(a)(1), and 8.04(a)(7).

In its final judgment,[5] the trial court found that Crampton committed professional misconduct, as defined by the Texas Rules of Disciplinary Procedure,

---

[4] Proposed Finding 5 stated: "Respondent failed to keep Wade Wiles reasonably informed about the status of his civil matter and failed to promptly comply with reasonable requests for information." Proposed Finding 6 stated: "Respondent failed to explain the status of his civil matter to the extent reasonably necessary to permit Wade Wiles to make informed decisions regarding the representation."

[5] The trial court initially signed its final judgment against Crampton on March 5, 2020, and this judgment required her to take certain actions by April 6, 2020. Crampton filed a timely notice of appeal on March 18, 2020, and her appeal was assigned to this Court. That same day, Crampton filed a motion to stay the judgment of suspension pending appeal, as allowed by Texas Rule of Disciplinary Procedure 3.13. While this motion was pending, Crampton filed a motion to modify the judgment, arguing that executive orders issued by Governor Abbott and emergency orders issued by the Texas Supreme Court in response to the COVID-19 pandemic

and violated five Disciplinary Rules: Rules 1.01(b)(1), 1.03(a), 1.03(b), 1.15(a)(1), and 8.04(a)(7). The court suspended Crampton from the practice of law for two years, with the first year probated and the second year an active suspension. Crampton filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**Sufficiency of the Evidence**

In her first issue, Crampton argues that the trial court's findings of fact were not supported by legally and factually sufficient evidence. In this issue, Crampton raises thirty-three separate "points of error" challenging various findings of fact and conclusions of law, arguing that there was "overwhelming evidence" establishing various evidentiary matters, and challenging aspects of the 2014 Judgment.

### A.    *Standard of Review*

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We therefore review the trial court's findings for legal and factual sufficiency using the same standards that we use to review a jury verdict. *Tex. Outfitters Ltd. v. Nicholson*, 572

tolled the compliance deadlines in the trial court's final judgment. Ultimately, the trial court granted the motion and modified the final judgment on April 17, 2020. Crampton filed a second notice of appeal under the same appellate cause number that had already been assigned. The modified judgment of suspension is the judgment that we review in this opinion.

S.W.3d 647, 653 (Tex. 2019); *HTS Servs.*, 190 S.W.3d at 111. When there is a complete reporter's record, findings of fact are not conclusive, and they are binding only if supported by the evidence. *HTS Servs.*, 190 S.W.3d at 111.

When conducting a legal sufficiency review of a finding on which the appellant did not bear the burden of proof at trial, we use the "no evidence" standard:

> "No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Evidence is not more than a mere scintilla if the factfinder would have to guess whether a vital fact exists. *Id.* at 813. We must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the finding under review. *Id.* at 827. We must credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *Id.*; *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822; *Thompson*, 483 S.W.3d at 93.

When conducting a factual sufficiency review, we consider all the evidence in a neutral light. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Woods v. Kenner*, 501 S.W.3d 185, 196 (Tex. App.—Houston [1st Dist.] 2016, no pet.). If the appellant challenges a finding on which she did not have the burden of proof at trial, we will reverse only if the supporting evidence is so weak that the finding is clearly wrong and manifestly unjust. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In a bench trial, the trial court is the sole judge of the witnesses' credibility, and the court may choose to believe one witness over another. *Woods*, 501 S.W.3d at 196 (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003), and *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). We may not substitute our judgment for that of the trial court. *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Woods*, 501 S.W.3d at 196.

We review de novo a trial court's conclusions of law. *HTS Servs.*, 190 S.W.3d at 111. An appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v.*

*Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *HTS Servs.*, 190 S.W.3d at 111; *see BMC Software*, 83 S.W.3d at 794 ("If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal.").

**B.     *Whether Sufficient Evidence Supports Trial Court's Findings of Disciplinary Rule Violations***

In presenting her first issue to this Court, Crampton includes thirty-three separate "points of error." She does not, however, present argument or authorities to support the majority of these points of error. *See* TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Instead, she argues that the Commission did not present sufficient facts to support its allegations that Crampton violated Disciplinary Rules 1.01(b)(1), 1.03(a), 1.03(b), and 1.15(a)(1). She also argues that she established that Wiles was not a "current client" at the time the 2014 Judgment against her was entered, and therefore she did not have to notify Wiles of her suspension or return his file to him at that time. She argues that, as a result, the Commission did not present sufficient facts to support its allegation that Crampton violated Disciplinary Rule 8.04(a)(7). We limit our analysis of Crampton's first issue on appeal to these arguments.

14

## 1.    Relevant Disciplinary Rules

Rule 1.01(b)(1) provides that, in representing a client, a lawyer shall not "neglect a legal matter entrusted to the lawyer." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(b)(1), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Rule 1.01 specifies that, as used in that rule, "'neglect' signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01(c).

Rule 1.03(a) requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.03(a). Rule 1.03(b) provides that a lawyer shall "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.03(b). A lawyer may not "withhold information to serve the lawyer's own interest or convenience." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.03 cmt. 4.

Rule 1.15(a) provides that after representation has commenced, a lawyer shall withdraw from representation of a client if the representation will result in a violation of Rule 3.08,[6] another applicable rule of professional conduct, or another law. TEX.

---

[6]     Disciplinary Rule 3.08, which is not applicable in this case, prohibits a lawyer from accepting or continuing employment as an advocate before a tribunal if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an

DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(a)(1); *id.* cmt. 2 ("[P]aragraph (a)(1) of this Rule requires a lawyer to withdraw from employment when the lawyer knows that the employment will result in a violation of a rule of professional conduct or other law."). Upon termination of the representation, the lawyer "shall take steps to the extent reasonably practicable to protect a client's interests." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(d). In "every instance of withdrawal," the lawyer "must take all reasonable steps to mitigate the consequences to the client." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15 cmt. 9; *Allison v. Comm'n for Lawyer Discipline*, 374 S.W.3d 520, 525 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Hines v. Comm'n for Lawyer Discipline*, 28 S.W.3d 697, 701–02 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.) (noting, in upholding finding that attorney violated Rule 1.15, that attorney "failed to protect [his client's] interests after he stopped representing her").

Rule 8.04(a)(7) provides that a lawyer shall not "violate any disciplinary or disability order or judgment." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(7). The Rules of Disciplinary Procedure define "professional misconduct" to include, among other things, "[a]cts or omissions by an attorney . . . that violate one or more of the Texas Disciplinary Rules of Professional Conduct" and

---

essential fact on behalf of the lawyer's client. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

"[v]iolation of any disciplinary or disability order or judgment." TEX. RULES DISCIPLINARY P. R. 1.06(CC), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. B. The violation of one disciplinary rule is sufficient to support a finding of professional misconduct. *Cluck v. Comm'n for Lawyer Discipline*, 214 S.W.3d 736, 739 (Tex. App.—Austin 2007, no pet.).

Sanctions for professional misconduct include disbarment, resignation in lieu of disbarment, suspension for a certain term, probation of suspension, interim suspension, public reprimand, and private reprimand. TEX. RULES DISCIPLINARY P. R. 1.06(FF); *Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 201–02 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The trial court has broad discretion to determine the appropriate sanction for professional misconduct. *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 888 (Tex. App.—Dallas 2011, pet. denied); *Eureste*, 76 S.W.3d at 202.

## 2. Analysis

Crampton's argument that insufficient evidence exists to support the trial court's findings that she violated five disciplinary rules is predicated on her contention that she terminated her representation of Wiles in July 2014 (and no later than September 2014) and therefore he was not a "current client" at the time the 2014 Judgment was entered against her. She argues that the evidence was "overwhelming" that her representation of Wiles had ended before the 2014

17

Judgment, that Wiles knew that the representation had ended, and that Wiles did not take any action to find a new attorney.

The trial court found as follows after the bench trial:

4.  In representing Wade Wiles, Respondent neglected the legal matter entrusted to her.

. . . .

7.  Respondent failed to explain the circumstances of her Partially Probated Suspension [the 2014 Judgment] to the extent reasonably necessary to permit Wade Wiles to make informed decisions regarding the representation.

8.  Respondent failed to withdraw from representing Wade Wiles when the representation would result in violation of rules of professional conduct.

9.  Respondent violated a disciplinary judgment against her in cause no 179,451-A, 30th Judicial District Court Wichita County, Texas [the 2014 Judgment] by failing to return to Wade Wiles his client file.

10. Respondent violated [the 2014 Judgment] by failing to notify Wade Wiles in writing, of her suspension under said cause number.

11. Respondent violated [the 2014 Judgment] by failing to notify the 30th Judicial District Court Wichita County, Texas in writing, of her suspension under said cause number.

The court concluded that Crampton's conduct violated five disciplinary rules.

Crampton testified that she began representing Wiles in 2011, she filed a lawsuit on his behalf against Vernon Auto Group, and the parties conducted discovery in that lawsuit. Difficulties arose after Wiles did not appear at a scheduled mediation, and the parties were unable to reach an agreement concerning a new

18

mediation date. The attorney-client relationship started deteriorating during this period.

According to Crampton, she first notified Wiles that she no longer wished to represent him in March or April 2014. She told him that he needed to find a new attorney to take over his case. She asked local attorneys in Wichita Falls, but she was unable to find someone who would take the case. She met with Wiles several times over the next few months, and each time she told him that she no longer wished to represent him. Crampton described a meeting with Wiles that occurred in July 2014, when she told him that she had not been able to find an attorney to take his case, she was no longer his attorney, and he needed to take his case file. Wiles responded that he did not want to take his file at that time; instead, he instructed Crampton to hold onto the file until it could be sent directly to new counsel.

In his deposition testimony, Wiles agreed that he had conversations with Crampton in which she told him that she no longer wished to represent him. Wiles' understanding was that Crampton would look for substitute counsel, and if she could not find another attorney to take his case, she would continue representing him. He agreed that he spoke with Crampton on the phone in September 2014 and she told him that she had terminated the attorney-client relationship and he needed to find a new attorney. He did not search for another attorney because he had "just pretty much given up on the deal."

Several months after Wiles' last phone conversation with Crampton concerning his case, the 2014 Judgment against Crampton was signed. This judgment suspended Crampton from the practice of law for two years. The judgment prohibited Crampton from "holding herself out as an attorney at law," "performing any legal services for others," and "appearing as counsel or in any representative capacity in any proceeding in any Texas court or before any administrative body." The judgment also imposed several requirements on Crampton that she was to complete by January 1, 2015. The judgment stated:

> It is further **ORDERED** that on or before January 1, 2015, Respondent shall notify each of her current clients in writing of this suspension. In addition to such notification, Respondent is **ORDERED** to return any files, papers, unearned money, and other property belonging to clients in the Respondent's possession to the respective clients or to another attorney at the client's request. . . .

> It is further **ORDERED** that Respondent shall, on or before January 1, 2015, notify in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court in which the Respondent has any matter pending of the terms of this Judgment, the style and cause number of the pending matter(s), and the name(s), address(es) and telephone number(s) of the client(s) Respondent is representing in Court.

Crampton unequivocally testified that she did not inform Wiles of her suspension either verbally or in writing; she did not send Wiles his client file until September 2016; and she did not notify the presiding judge of the trial court in which Wiles' case was pending of her suspension.

20

In December 2015, during Crampton's period of suspension, the trial court sent a notice of intent to dismiss Wiles' case unless a verified motion to retain was filed at least seven days before a hearing scheduled for January 14, 2016. This notice was sent to Crampton because she was still Wiles' counsel of record. Crampton acknowledged that she never filed a motion to withdraw as Wiles' counsel, and she agreed that she was listed as counsel of record from the beginning of the lawsuit until it was dismissed for want of prosecution in February 2016. Although Crampton testified that she sent a copy of the notice of intent to dismiss to Wiles by mail, Wiles testified that he did not receive anything in the mail from Crampton, although it was possible he received the notice directly from the trial court. Crampton agreed that she did not send the dismissal order to Wiles, and she did not try to find an attorney who could assist him with reinstating his case.

Crampton argues that she had terminated the attorney-client relationship with Wiles no later than September 2014, and therefore he was not a "current client" such that she was required to notify him of her suspension and return his client file under the terms of the 2014 Judgment. Although the record contains testimony from both Crampton and Wiles that she had terminated the representation prior to the 2014 Judgment, Crampton admitted that, despite this, she did not move to withdraw from representing Wiles in his pending lawsuit. Therefore, she was still listed as counsel

21

of record for him until his case was ultimately dismissed for want of prosecution in February 2016.

Under these facts, we conclude that there is evidence in the record such that the trial court reasonably could have concluded that Wiles was still a client of Crampton's at the time of the 2014 Judgment, and thus Crampton was required to notify him of her suspension and return his client file. It is undisputed that Crampton never notified Wiles of her suspension, and she did not return his client file until September 2016, well after the January 1, 2015 deadline imposed by the 2014 Judgment. It is also undisputed that Crampton did not notify the presiding judge of the court in which Wiles' lawsuit was pending of her suspension. We therefore conclude that Findings 7, 8, 9, 10, and 11 are supported by legally and factually sufficient evidence.

Crampton testified that she repeatedly told Wiles over a period of several months that she was terminating the attorney-client relationship, she was no longer representing him, and he needed to find a new attorney to take his case. Crampton did not, however, move to withdraw from representing Wiles in his pending lawsuit, and she remained counsel of record for the suit. She did not inform Wiles of her suspension and the effect of that suspension—that she could not, consistent with the 2014 Judgment and the Disciplinary Rules, represent him or take any action in his pending lawsuit while suspended—and Wiles did not attempt to secure new counsel.

22

Wiles' pending lawsuit languished for more than a year before the trial court notified counsel that it intended to dismiss the suit. Although Crampton testified that she sent Wiles a copy of the trial court's December 2015 notice of intent to dismiss,[7] Wiles testified that he did not receive anything from Crampton concerning this notice, but he "possibly" received the notice directly from the trial court. Crampton did not notify Wiles that his case had been dismissed, and she did not assist him in finding an attorney to reinstate the case. We therefore conclude that Finding 4—in representing Wiles, Crampton neglected the matter entrusted to her—is supported by legally and factually sufficient evidence.

Based on the evidence presented at trial, the trial court reasonably could have concluded that Crampton: (1) neglected the legal matter entrusted to her, in violation of Rule 1.01(b)(1); (2) did not explain her suspension to the extent reasonably necessary to permit Wiles to make informed decisions regarding the representation, in violation of Rule 1.03(b); (3) did not withdraw from representing Wiles when continuing to represent him would have violated a disciplinary rule, in violation of

---

[7] At Wiles' deposition, he was presented with an unsigned letter from Crampton, dated December 15, 2015, that informed him of the notice of intent to dismiss. In this letter, Crampton stated that she was "unable to respond to this Notice from the Court and you must find someone else to represent you or represent yourself." She did not state that she had been suspended from the practice of law. Wiles testified that he did not receive a signed or unsigned copy of this letter in the mail. Instead, the first time he saw the letter was when Crampton sent him his file in September 2016.

23

Rule 1.15(a)(1); and (4) violated a disciplinary judgment, in violation of Rule 8.04(a)(7). We therefore hold that the trial court's findings of fact are supported by legally and factually sufficient evidence, and the court did not err in concluding that Crampton violated these four disciplinary rules and committed professional misconduct.

In addition, the trial court also concluded that Crampton violated Rule 1.03(a), which requires an attorney to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.03(a). However, the trial court expressly struck the Commission's proposed Finding 5—"[Crampton] failed to keep Wade Wiles reasonably informed about the status of his civil matter and failed to promptly comply with reasonable requests for information"—and did not issue any other findings relevant to Rule 1.03(a). Each of the other findings issued by the trial court related to violations of other disciplinary rules.

When a trial court files findings of fact, those findings "form the basis of the judgment upon all grounds of recovery and of defense embraced therein." TEX. R. CIV. P. 299; *Clinton v. Gallup*, 621 S.W.3d 848, 850 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Nguyen v. Nguyen*, 355 S.W.3d 82, 92 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Written findings "are equivalent to a jury verdict on special issues and permit the parties, as well as the reviewing court, to ascertain the

24

true basis for the trial court's decision." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The trial court is not required to make a finding on every element of a cause of action. *Clinton*, 621 S.W.3d at 850. If the trial court makes a finding on at least one element of a cause of action, we may presume that the court made implied findings on the remaining elements. *Id.*; TEX. R. CIV. P. 299 ("[W]hen one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.").

However, if the trial court omits findings on all elements of a cause of action, we may not imply findings on that cause of action. *Clinton*, 621 S.W.3d at 850; *Nguyen*, 355 S.W.3d at 92 ("Express findings made by the trial court 'cannot be extended by implication to cover further independent issuable facts.'") (quoting *Jones v. Smith*, 291 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). As Rule 299 states, "The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact." TEX. R. CIV. P. 299. If a ground of recovery or defense is entirely omitted from a trial court's findings, we deem the omission to be deliberate "on the grounds that the trial court did not award relief as to that cause of action." *Clinton*, 621 S.W.3d at 850; *see also Vickery*, 5 S.W.3d at 253 ("If the appellee drafts proposed findings of fact and conclusions of law that set forth every

element of his ground of recovery or defense, and the trial court deletes one of the elements, the omitted element cannot later be supplied on appeal by implication. It is apparent from the record that the omission was deliberate; the element was 'requested' and refused.").

Here, in its findings and conclusions, the trial court handwrote an "X" over proposed Finding 5—a finding that Crampton "failed to keep Wade Wiles reasonably informed about the status of his civil matter and failed to promptly comply with reasonable requests for information" and which related to whether Crampton violated Rule 1.03(a)—and initialed next to this change. The court did not make any specific findings on the elements of Rule 1.03(a). Because the trial court wholly omitted any findings relevant to the elements of Rule 1.03(a) in its findings of fact, the judgment may not be supported on appeal by presumed findings upon this ground of recovery. *See* TEX. R. CIV. P. 299; *Clinton*, 621 S.W.3d at 850; *Vickery*, 5 S.W.3d at 252.

We therefore hold that the trial court erred by ruling that Crampton violated Rule 1.03(a) when it issued no findings to support this conclusion. *See Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 67 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding that evidence was legally insufficient to support finding that attorney violated Rule 1.15(d) and sustaining attorney's challenge to

relevant finding and conclusion when no other findings could support trial court's conclusion that attorney violated Rule 1.15(d)).

This error does not, however, require reversal of the judgment. Because sufficient evidence supports the trial court's findings that Crampton violated four disciplinary rules in addition to Rule 1.03(a), the trial court's judgment that Crampton committed professional misconduct is supported by the evidence. We therefore modify the judgment to delete the trial court's finding that Crampton violated Rule 1.03(a). *See, e.g.*, *Weiss v. Comm'n for Lawyer Discipline*, 981 S.W.2d 8, 16, 25 (Tex. App.—San Antonio 1998, pet. denied) (concluding that legally and factually insufficient evidence supported finding that attorney violated Rule 1.15(d), but because evidence supported findings of other rule violations, appropriate disposition was to delete finding that attorney violated Rule 1.15(d) from trial court's judgment and affirm as modified).

We overrule Crampton's first issue.

## Due Process Challenge

In her second issue, Crampton argues that Texas Rule of Disciplinary Procedure 3.08, which provides that the Commission's burden of proof in disciplinary actions is preponderance of the evidence, violates her due process rights. She argues that because disciplinary proceedings are "quasi-criminal" in nature, a heightened burden of proof should apply. In her third issue, she argues that the

27

Commission is "inherently conflicted" when it argues in one case that its attorneys in disciplinary proceedings are entitled to the same absolute immunity that criminal prosecutors enjoy while arguing in this case that the Commission need only prove its allegations in disciplinary proceedings by the civil preponderance of the evidence standard. Crampton briefs these arguments together, and we likewise address them together.

The Texas Rules of Disciplinary Procedure are promulgated by the Texas Supreme Court and establish the procedures that are used in the professional disciplinary system for Texas attorneys. TEX. RULES DISCIPLINARY P. R. 1.02. Several rules govern the procedures used when a disciplinary petition is filed by the Commission in district court. Relevant here, Rule 3.08 sets out several applicable rules, including:

> A. Disciplinary Actions are civil in nature.
>
> B. Except as varied by these rules, the Texas Rules of Civil Procedure apply.
>
> C. Disciplinary Actions must be proved by a preponderance of the evidence.
>
> D. The burden of proof in a Disciplinary Action seeking Sanction is on the Commission.

TEX. RULES DISCIPLINARY P. R. 3.08(A)–(D); TEX. RULES DISCIPLINARY P. R. 1.06(FF) (defining "Sanction" as including suspension for certain term, probation of suspension, and payment of reasonable attorney's fees and expenses).

Crampton argues that attorney disciplinary proceedings are "quasi-criminal" in nature, citing the United States Supreme Court's opinion in *In re Ruffalo*. *See* 390 U.S. 544 (1968). In *Ruffalo*, a local bar association filed charges against Ruffalo, and the Ohio Board of Commissioners on Grievances and Discipline charged Ruffalo with twelve counts of misconduct. *Id.* at 546. After testimony had been given during the disciplinary hearing, the Board added a thirteenth charge of misconduct. *Id.* Ruffalo objected, in part based on lack of notice of this charge. *Id.* The objection was overruled, and no further testimony was given. *Id.* at 547, 549. Ultimately, the Ohio Supreme Court indefinitely suspended Ruffalo from the practice of law in Ohio state courts on two findings of alleged misconduct, one of which was the thirteenth charge of misconduct. *Id.* at 545, 547. Subsequently, the Sixth Circuit disbarred Ruffalo from practicing law in that court based on the finding of the thirteenth charge of misconduct in the Ohio state proceedings, and Ruffalo sought review of that order in the United States Supreme Court. *Id.*

The Supreme Court, in addressing whether Ruffalo's due process rights were violated during the Ohio state proceedings, noted that the charge for which Ruffalo was disbarred in the Sixth Circuit was not part of the original charges against him but was instead added after testimony had been received by the Board. *Id.* at 549. The Court stated that disbarment is "a punishment or penalty imposed on the

29

lawyer," and as a result, lawyers are entitled to procedural due process, including fair notice of the charges. *Id.* at 550. The Court then stated:

> *These are adversary proceedings of a quasi-criminal nature.* The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.
>
> How the charge would have been met had it been originally included in those leveled against [Ruffalo] by the Ohio Board of Commissioners on Grievances and Discipline no one knows.
>
> This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived [Ruffalo] of procedural due process.

*Id.* at 551–52 (emphasis added) (internal citations omitted). The Court reversed the order disbarring Ruffalo from practice in the Sixth Circuit. *Id.* at 552. *Ruffalo* did not address whether the due process clause mandated a particular burden of proof in attorney discipline proceedings.

Texas courts have repeatedly held, even post-*Ruffalo*, that attorney discipline proceedings in Texas are civil in nature. *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 438 (Tex. 1998); *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 657 n.1 (Tex. 1989) (per curiam) ("Clear Texas authority is that disciplinary proceedings are civil in nature."); *Tirrez v. Comm'n for Lawyer Discipline*, No. 03-16-00318-CV, 2018 WL 454723, at *3 (Tex. App.—Austin Jan. 12, 2018, pet. denied) (mem. op.), *cert. denied*, 139 S. Ct. 275 (2018); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 343–44 (Tex. App.—Houston [14th Dist.] 2009, pet. denied);

*Acevedo v. Comm'n for Lawyer Discipline*, 131 S.W.3d 99, 104 (Tex. App.—San Antonio 2004, pet. denied); *Favaloro v. Comm'n for Lawyer Discipline*, 994 S.W.2d 815, 822 (Tex. App.—Dallas 1999, pet. stricken); *Hawkins v. Comm'n for Lawyer Discipline*, 988 S.W.2d 927, 935 (Tex. App.—El Paso 1999, pet. denied); *McInnis v. State*, 618 S.W.2d 389, 395 (Tex. App.—Beaumont 1981, writ ref'd n.r.e.); *see also Capps v. State*, 265 S.W.3d 44, 49–50 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (stating such in context of concluding that prohibition against double jeopardy does not bar criminal charges based on same conduct previously adjudicated in attorney discipline proceeding).

Courts have also held that because attorney disciplinary proceedings are civil in nature, the proper burden of proof for the Commission to prove the allegations of misconduct is preponderance of the evidence, not a heightened burden such as clear and convincing evidence or beyond a reasonable doubt. *See Tirrez*, 2018 WL 454723, at *3; *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 230 n.1 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *McInnis*, 618 S.W.2d at 397; *Drake v. State*, 488 S.W.2d 534, 538 (Tex. App.—Dallas 1972, writ ref'd n.r.e.).

In *Tirrez*, the Austin Court of Appeals noted that while it is well-settled that Texas attorneys facing disciplinary proceedings have procedural due process protections, no Texas authority supports the assertion that due process "requires that civil attorney-discipline proceedings should be subject to a higher burden of proof

31

than other civil proceedings." 2018 WL 454723, at \*4; *cf. Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446–47 (Tex. App.—Austin 2011, pet. denied) (agreeing that doctor had constitutionally protected property interest at stake in medical license revocation proceeding and was entitled to procedural due process, but disagreeing that doctor was "entitled to some higher level of due process because the contested-case hearing was a quasi-criminal proceeding" and noting that disciplinary action before board was civil in nature, not quasi-criminal); *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 777 (Tex. App.—Austin 2005, no pet.) (rejecting argument that due process requires medical board to apply clear and convincing standard of proof in medical disciplinary actions and noting caselaw holding similarly in context of professional license revocation proceedings).

The Austin Court reasoned that the purpose of professional disciplinary proceedings is to enforce civil statutes, and in civil cases, "[n]o doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence." *Tirrez*, 2018 WL 454723, at \*4 (quoting *Pretzer v. Motor Vehicle Bd.*, 125 S.W.3d 23, 39 (Tex. App.—Austin 2003), *aff'd in part, rev'd in part*, 138 S.W.3d 908 (Tex. 2004) (per curiam)). The clear and convincing burden of proof is applied in "extraordinary" cases, such as civil commitment hearings and involuntary termination of parental rights, and the Austin Court concluded that attorney disciplinary proceedings are not "such extraordinary circumstances." *Id.*

32

We agree with the Texas courts that have addressed this issue and conclude that attorney discipline proceedings are civil in nature, not quasi-criminal. *See, e.g.*, *Evans*, 774 S.W.2d at 657 n.1 (stating that "[c]lear Texas authority is that disciplinary proceedings are civil in nature" and expressly disapproving of statements by court of appeals that disciplinary proceedings are "quasi-criminal in nature"). Although Crampton argues that other states have adopted a heightened burden of proof similar to clear and convincing evidence in attorney discipline proceedings, she cites to no Texas authority or United States Supreme Court authority which holds that applying the preponderance of the evidence burden of proof in disciplinary proceedings violates an attorney's due process rights.[8] We conclude that Rule of Disciplinary Procedure 3.08, requiring the Commission to prove a disciplinary action by a preponderance of the evidence, does not violate Crampton's due process rights. *See* TEX. RULES DISCIPLINARY P. R. 3.08(C)–(D).

---

[8] Crampton raised this same argument in her appeal from the 2014 Judgment. *See Crampton v. Comm'n for Lawyer Discipline*, 545 S.W.3d 593, 606 (Tex. App.—El Paso 2016, pet. denied), *cert. denied*, 138 S. Ct. 2661 (2018). The El Paso Court acknowledged that Crampton had cited to the laws of several states which apply a clear and convincing burden of proof in attorney discipline proceedings, but stated, "The burden of proof in Texas, however, is set by our rules as a preponderance of the evidence." *Id.* The court then stated, "While Crampton claims the Texas due-course-of-law and Federal Due Process Clause mandate a higher burden of proof, she advances no substantive arguments or authority in favor of that claim, and we deem the issue waived." *Id.* Crampton raised this argument in her petition for review and in her petition for writ of certiorari, but both the Texas Supreme Court and the United States Supreme Court denied review.

In her third issue, Crampton argues that an "inherent conflict" exists between the Commission's position in this case that it is only required to prove the allegations of misconduct by a preponderance of the evidence and the Commission's position in another case in which it argued that the attorney handling the proceeding against Crampton that led to the 2014 Judgment was entitled to the same kind of absolute immunity to which criminal prosecutors are entitled. She argues that lawyers representing the Commission should not be allowed to "wrap themselves in protections of immunity arising in the context of 'prosecutions'" while also arguing that disciplinary proceedings are not quasi-criminal and respondent attorneys are not entitled to a heightened burden of proof.

The disciplinary proceeding against Crampton that led to the 2014 Judgment against her was assigned to former Commission attorney Susan Farris. *See Crampton v. Farris*, 596 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Farris also handled a second disciplinary proceeding against Crampton that was initiated in 2016. *Id.* at 270. In the second disciplinary proceeding, Crampton asserted third-party claims against Farris in her individual capacity, including claims that Farris acted *ultra vires* in her handling of both proceedings, claims that Farris violated Crampton's Fifth and Fourteenth Amendment rights, claims for intentional infliction of emotional distress, and claims for violation of section 1983. *Id.* at 271. Farris filed a plea to the jurisdiction and asserted both sovereign immunity and

absolute immunity granted to Commission lawyers under the Texas Rules of Disciplinary Procedure. *Id.* at 271–72. The trial court granted Farris's plea to the jurisdiction and dismissed Crampton's claims. *Id.* at 272. Crampton appealed, and the appeal was transferred to this Court pursuant to the Texas Supreme Court's docket equalization authority. *Id.* at 270 n.1.

In affirming the trial court's ruling granting Farris's plea to the jurisdiction, we noted that the Commission is a standing committee of the State Bar of Texas—an administrative agency within the state's judicial department—and one of the roles of the Commission is to "investigate and prosecute suits to enjoin members, nonlicensees, and nonmembers of the state bar from the practice of law." *Id.* at 273 (quoting TEX. GOV'T CODE § 81.076(g)). Rule of Disciplinary Procedure 17.09 grants "absolute and unqualified" immunity from suit to all members of the Commission and all staff members of the Commission "for any conduct in the course of their official duties." *Id.* (quoting TEX. RULES DISCIPLINARY P. R. 17.09).

We reasoned that the immunity granted to Commission attorneys was similar to the common-law doctrine of absolute prosecutorial immunity for criminal prosecutors, *see, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 421–27 (1976) (discussing common law rule of prosecutorial immunity and concluding that same immunity exists for criminal prosecutors under section 1983), and to the absolute immunity extended to agency officials in administrative adjudication proceedings, *see, e.g.*,

*Butz v. Economou*, 438 U.S. 478, 512–13 (1978) (concluding that adjudication within federal administrative agency shares enough characteristics with judicial process such that participants in adjudications should be immune from suits for damages). *See Crampton*, 596 S.W.3d at 273–74. We noted that all of Farris's allegedly wrongful acts were "acts intimately associated with Farris's duties as the Commission attorney prosecuting the disciplinary action against Crampton and constituted 'conduct in the course of [her] official duties.'" *Id.* at 274–75 (quoting TEX. RULES DISCIPLINARY P. R. 17.09). We therefore concluded that Farris was entitled to absolute and unqualified immunity under Rule 17.09. *Id.* at 275.

We disagree with Crampton's contention that because the Commission argued that one of its attorneys was entitled to immunity from suit akin to that enjoyed by a criminal prosecutor, the Commission essentially acknowledged that disciplinary proceedings are criminal in nature while it simultaneously denied to Crampton constitutional protections "inherent in criminal prosecution," such as a heightened burden of proof. As noted above, courts—including the United States Supreme Court—have concluded that the absolute immunity granted to criminal prosecutors should be extended to attorneys who perform similar functions within administrative agencies. *See Butz*, 438 U.S. at 512–13; *Green v. State Bar of Tex.*, 27 F.3d 1083, 1088 (5th Cir. 1994) (concluding that attorney for state bar's Unauthorized Practice of Law Committee performed duties analogous to that of public prosecutors and

36

agency officials in administrative adjudication process, and attorney was therefore entitled to protection of absolute immunity from civil suit for damages). This extension of immunity does not transform these civil proceedings into criminal or quasi-criminal prosecutions. We therefore conclude that even though the attorney handling the disciplinary action against Crampton is entitled to absolute and unqualified immunity from suit "for any conduct in the course of [his] official duties," this does not negate the well-settled Texas law holding that attorney disciplinary proceedings are civil in nature. *See* TEX. RULES DISCIPLINARY P. R. 17.09.

We overrule Crampton's second and third issues.

**Judgment Based on Purportedly Void Order**

In her fourth issue, Crampton argues that the Commission relied upon an unenforceable and void order—the 2014 Judgment—as the basis for part of the judgment it sought against her in this case. Specifically, Crampton argues that the 2014 Judgment was void because the judge appointed to preside over that proceeding, Judge Mazur, left the bench on January 1, 2015, after the 2014 Judgment was signed but before it was entered of record, and the Texas Supreme Court later rescinded his appointment in February 2015. Crampton contends that because Judge Mazur's appointment was "rescinded," all his actions taken in the prior disciplinary proceeding were void and it was as if he had never been appointed.

Crampton appealed the 2014 Judgment and raised these same arguments in that appeal. *See Crampton*, 545 S.W.3d at 600–02. In affirming the 2014 Judgment, the El Paso Court of Appeals noted that, when a disciplinary petition has been filed in district court, the Texas Supreme Court appoints an active district judge to preside over the case, and that judge is subject to objection, recusal, or disqualification as provided by law. *Id.* at 600 (citing TEX. RULES DISCIPLINARY P. R. 3.02). A judge may be removed from a case because they are constitutionally disqualified, subject to a statutory prohibition from sitting in a case, or recused under Texas Supreme Court rules. *Id.* (citing TEX. CONST. art. V, § 11, TEX. GOV'T CODE § 74.053(d), TEX. R. CIV. P. 18b, and TEX. R. APP. P. 16). If a judge is constitutionally disqualified or subject to statutory disqualification, any order or judgment rendered by the judge is void. *Id.* However, when a judge is recused under the rules of civil procedure, the earlier actions of the recused judge are valid and continue in effect unless altered by the successor judge assigned to the case. *Id.*

The El Paso Court disagreed with Crampton's contention that the Texas Supreme Court's "rescission" of Judge Mazur's appointment was tantamount to a disqualification and therefore rendered his earlier actions in the case, including his signing of the 2014 Judgment, void. *Id.* at 600–01. The court noted that nothing in the record suggested Judge Mazur was constitutionally or statutorily disqualified from acting as a judge in the disciplinary proceeding. *Id.* at 601. Instead, the record

38

"suggest[ed]" that the parties informally informed the Texas Supreme Court that, as of January 1, 2015, Judge Mazur was no longer an active district judge and could no longer act on pending post-judgment motions in the case. *Id.* To rule on those pending motions, the Texas Supreme Court needed to appoint a new judge, which it did. *Id.* The El Paso Court stated that "[n]othing in the context of these events suggests that Judge Mazur was disqualified from hearing the case up to December 31, 2014." *Id.*

Crampton argued that the Texas Supreme Court's usage of the word "rescind" in the order ending Judge Mazur's appointment is similar to breach of contract cases where, after rescission of the contract, "the parties are returned to the pre-contract status quo." *Id.* In rejecting this argument, the El Paso Court reasoned that even in contractual settings, "the term rescission can sometime mean only negating any future obligations." *Id.* Reviewing the word "rescind" in the context of the Texas Supreme Court's order, the El Paso Court was "not convinced" that the supreme court "intended to invalidate all the previous rulings made by Judge Mazur. Rather, the context suggests only that because Judge Mazur was no longer an active sitting judge as of January 1, 2015, a replacement appointment was necessary to complete the case." *Id.* at 601–02. The El Paso Court concluded that Judge Mazur's orders in the disciplinary proceeding were not void. *Id.* at 602.

In arguing to this Court that the 2014 Judgment was void because Judge Mazur's appointment was "rescinded" by the Texas Supreme Court several weeks after the judgment was signed, Crampton does not mention that she already raised this same argument in her appeal of the 2014 Judgment itself and that the El Paso Court of Appeals already rejected this argument and held that the judgment was not void. She provides no analysis of the prior appellate opinion, and she offers no argument for why the El Paso Court's holding was incorrect or why we should not follow that holding. In the absence of any such argument, we decline to revisit this issue which has already been decided by one of our sister intermediate courts of appeals.

We overrule Crampton's fourth issue.

## Enforceability of 2014 Judgment

In her fifth issue, Crampton argues that the 2014 Judgment required her to take certain actions by January 1, 2015, but the judgment was not "entered of record" until January 6, 2015. She argues that the 2014 Judgment was therefore not capable of being enforced prior to the date it was entered of record.

All orders must be entered of record to be effective. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). Judgments routinely go through three stages: rendition, reduction to writing and judicial signing, and entry. *Id.* at 314 n.5; *Wittau v. Storie*, 145 S.W.3d

40

732, 735 (Tex. App.—Fort Worth 2004, no pet.) (per curiam). "A judgment is 'rendered' when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk." *In re Bill Heard Chevrolet*, 209 S.W.3d at 314 n.5; *see In re Guerrero*, 440 S.W.3d 917, 921 n.1 (Tex. App.—Amarillo 2014, orig. proceeding) ("Rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication.").

In the case of an oral rendition in open court, the order is valid from the time it is officially announced, and formal entry of the order is only a ministerial act. *In re Bill Heard Chevrolet*, 209 S.W.3d at 314; *Wittau*, 145 S.W.3d at 735; *see also Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969) ("The principle that an oral judgment by the court is valid is predicated upon the supporting principle that the entry of a trial judgment is only a ministerial act."). "But if the trial court signs a judgment on an issue without first making an oral pronouncement in open court, the act of signing the judgment is the official act of rendering judgment." *Wittau*, 145 S.W.3d at 735.

"The rendition of the trial court's decision, whether in open court or by official document of the court, is the critical moment when the judgment becomes effective." *Henry v. Cullum Cos.*, 891 S.W.2d 789, 792 (Tex. App.—Amarillo 1995, writ denied); *see Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d

41

351, 354 (Tex. App.—Tyler 2001, pet. denied) ("The judgment becomes effective once it is 'rendered.'"). A judgment is "entered" when it is recorded in the minutes of the court "by a purely ministerial act of the trial court's clerk, thereby providing enduring evidence of the judicial act." *Henry*, 891 S.W.2d at 792; *see Araujo v. Araujo*, 493 S.W.3d 232, 236 (Tex. App.—San Antonio 2016, no pet.) ("[E]ntry of a written order is considered a ministerial act reflecting the trial court's action following the rendering of a judgment."); *Garza v. Tex. Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 166 (Tex. App.—El Paso 2000) ("Rendition is distinguishable from the entry of judgment which is a purely ministerial act by which judgment is made of record and preserved."), *aff'd*, 89 S.W.3d 1 (Tex. 2002).

At trial in the underlying proceeding, Crampton testified that Judge Mazur orally rendered judgment against her on December 4, 2014, but this rendition only included statements concerning the length of Crampton's suspension, the amount she was to pay in restitution, and the fact that the suspension would be partially probated. Judge Mazur did not orally state anything on the record concerning notifying clients or courts of the suspension or concerning return of client files.

On December 19, 2014, Judge Mazur signed the 2014 Judgment, a written judgment of partially probated suspension. Judge Mazur ruled that Crampton had committed professional misconduct and that the proper discipline was suspension from the practice of law for two years, with the second year probated. Judge Mazur

42

ordered Crampton to pay restitution to her former clients in the amount of $7,500, due by December 31, 2015. He also ordered Crampton, by January 1, 2015, to notify each of her current clients in writing of her suspension; return all files, unearned money, and property to her clients; and notify each judge of each court in which she had a matter pending of the terms of her suspension. Crampton acknowledged that both she and her counsel in that disciplinary proceeding received the 2014 Judgment on December 30, 2014.[9] The 2014 Judgment was not, however, stamped and filed by the Wichita County Clerk until January 6, 2015.

On appeal, Crampton argues that the 2014 Judgment was not "entered of record" until January 6, 2015, the date it was file-stamped by the Wichita County Clerk, but the 2014 Judgment required her to perform certain actions by January 1, 2015, a date before the judgment was entered. She therefore argues that the 2014 Judgment was not capable of enforcement prior to the date it was entered of record. We disagree.

At the latest, Judge Mazur rendered judgment against Crampton when he signed the 2014 Judgment on December 19, 2014. *See Wittau*, 145 S.W.3d at 735. This was the date that the judgment became effective. *See Stanfield*, 71 S.W.3d at

---

[9]     The El Paso Court of Appeals noted in its opinion that Judge Mazur signed the 2014 Judgment on December 19, 2014, and that "Crampton filed a brief below which acknowledged her attorney received the judgment on December 30, 2014." *See Crampton*, 545 S.W.3d at 599.

354; *Henry*, 891 S.W.2d at 792. Entry of judgment, which occurred later, was a ministerial act that reflected the trial court's action. *See Araujo*, 493 S.W.3d at 236; *Garza*, 83 S.W.3d at 166; *Henry*, 891 S.W.2d at 792. We conclude that the 2014 Judgment did not require Crampton to take actions prior to the date that judgment became effective, and therefore the judgment was enforceable.[10]

We overrule Crampton's fifth issue.

---

[10] Crampton cites two cases in support of her contention that the 2014 Judgment was not enforceable before it was entered on January 6, 2015. Both cases are inapposite. In *In re Barner*, the trial court signed an order granting a motion to compel on June 20, 2007, that compelled Barner to respond to discovery requests and pay attorney's fees by May 16, 2007. *See* No. 01-07-00603-CV, 2007 WL 4099351, at *1 (Tex. App.—Houston [1st Dist.] Nov. 15, 2007, orig. proceeding). Barner sought mandamus relief, arguing that the trial court abused its discretion in signing the order because it was impossible to comply with the order. *Id.* The real party in interest argued that an associate judge granted the motion to compel at a hearing on May 11, 2007, and made a docket sheet entry, and the later signing in June was simply a ministerial act. *Id.* This Court concluded that the docket sheet entry was "no substitute for the court's record," and no written order or transcript from a hearing indicated that the operative date of the order was actually May 11, as opposed to June 20. *Id.* at *2. We therefore held that the trial court abused its discretion in signing the June 20 order, which required Barner to "provide discovery answers in the past." *Id.* In *State Farm Insurance Co. v. Pults*, the trial court notified the parties by telephone in October 1989 of its ruling on a motion for a protective order and made a docket sheet entry. *See* 850 S.W.2d 691, 693 (Tex. App.—Corpus Christi–Edinburg 1993, no writ). However, the trial court did not announce the ruling in open court, issue the ruling in writing, or file the ruling as part of the papers of the case. *Id.* As a result, "no effective order requiring production of documents" was in place at the time the trial court imposed sanctions for non-compliance with the order in January 1990, and the Corpus Christi–Edinburg Court of Appeals held that the trial court erred in granting sanctions. *Id.* Here, however, Judge Mazur signed the written 2014 Judgment on December 19, 2014, and this judgment required Crampton to take certain actions by January 1, 2015. The 2014 Judgment was in writing, it was signed by the presiding judge, and it did not require Crampton to take any actions before the date the judgment became effective.

## Conclusion

We modify the judgment of the trial court to delete the finding that Crampton violated Disciplinary Rule of Professional Conduct 1.03(a). We affirm the judgment as modified.

April L. Farris
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Farris.