**Miguel ARAUJO, Appellant**

**v.**

**Yolanda ARAUJO, Appellee**

No. 04–15–00503–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: May 25, 2016

Jo Chris G. Lopez, Robinson C. Ramsey, Langley & Banack, Inc., San Antonio, TX, for Appellant.

Ryan Charles Moe, Alyse Haugen, The Law Office of Ryan C. Moe, PLLC, San Antonio, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Sandee Bryan Marion, Chief Justice

This is an appeal from an "Order Dividing Railroad Retirement Benefits" (hereinafter, "the Railroad Retirement Order") signed by the trial court fifty-nine days after the trial court signed an "Agreed Decree of Divorce." Appellant, Miguel Araujo, asserts the trial court lacked jurisdiction to enter the Railroad Retirement Order because the trial court's plenary power over the divorce case expired prior to entry of the order. We reverse and render.

## BACKGROUND

Miguel and Yolanda Araujo were divorced by an agreed divorce decree signed by the trial court on April 21, 2015. The decree awarded Miguel various assets including the following:

All interest in the Railroad Retirement Board pension arising out of Miguel A. Araujo's employment during the parties' marriage, except that amount specifically awarded to Yolanda R. Araujo in this Decree and *the Order Dividing Railroad Retirement Benefits to be entered after this Decree.* [Emphasis added.]

The decree awarded Yolanda various assets including the following:

A portion of the community property interest in the Railroad Retirement Board pension non-tier I benefits arising out of Miguel A. Araujo's employment during the parties' marriage, that portion computed by multiplying the divisible portion of Miguel A. Araujo's monthly benefit by a fraction, the numerator of which is the number of months Miguel A. Araujo worked for a railroad employer during the period of the marriage June 8, 1987 through April 21, 2015, and the denominator of which shall be Miguel A. Araujo's total number of months employed by a railroad employer at retirement, and then dividing the product by two, if, as, and when received *as more particularly specified in the Order Dividing Railroad Retirement Benefits to be entered after this Decree.* [Emphasis added.]

No appeal from the decree was taken, and the decree became final on May 21, 2015. On June 19, 2015, Yolanda filed a "Motion to Enter" in which she asked the trial court to sign her attached Railroad Retirement Order. Miguel responded to Yolanda's motion, arguing the trial court lacked jurisdiction to take any action on Yolanda's motion because the motion was filed after the trial court's plenary power over the divorce case had expired, and its jurisdiction to enter any post-judgment qualified domestic relations order ("QDRO")—such as the Railroad Retirement Order—had not been properly invoked pursuant to the applicable provisions of the Texas Family Code. Following a June 25, 2015 hearing on Yolanda's motion, the trial court signed the Railroad Retirement Order on July 20, 2015.

In this appeal, Miguel raises two issues: (1) the trial court lacked plenary power to sign the Railroad Retirement Order in the

divorce case and (2) he was deprived of due process and adequate time to defend against Yolanda's request for such an order.

## JURISDICTION

Miguel asserts that because neither he nor Yolanda filed any post-judgment pleadings extending the trial court's plenary power over the divorce case, the court's plenary power to take any further action in the divorce case—including signing a QDRO such as the Railroad Retirement Order—expired on May 21, 2015. However, Miguel also acknowledges that after a trial court's plenary power over a divorce case has expired, a party may ask the court to sign a QDRO pursuant to the terms of Texas Family Code section 9.102, which requires a party seeking a post-judgment QDRO to file a petition governed by the same rules of Texas Civil Procedure applicable to the filing of an original lawsuit. Miguel contends Yolanda did not comply with section 9.102, but instead, simply filed her motion to enter in the divorce case over which the trial court had already lost plenary power. Therefore, according to Miguel (1) the trial court lacked plenary power to enter the Railroad Retirement Order in the divorce case because the court's plenary power over the divorce case had expired and (2) the trial court lacked personal jurisdiction over him in proceeding on the motion to enter the order because Yolanda did not satisfy the Family Code's statutory requirements necessary to obtaining a post-judgment QDRO.

Yolanda counters by asserting that signing the Railroad Retirement Order was merely a ministerial act because doing so reflected the trial court's judgment in the divorce decree on Miguel's Railroad Retirement Board pension benefits. She asserts the provisions of the Family Code

applicable to obtaining a post-judgment QDRO do not apply in this case because the divorce decree rendered the relief available—a QDRO—and, by doing so, the trial court retained plenary power until the final Railroad Retirement Order was signed. We turn first to Yolanda's argument that the trial court's signing of the Railroad Retirement Order was a ministerial act because the divorce decree rendered a QDRO. If the decree did not render a QDRO, we must next address whether Yolanda was required to comply with the applicable provisions of the Family Code.

### A. Did the Trial Court Render a QDRO

"A judgment routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry." *Henry v. Cullum Co., Inc.*, 891 S.W.2d 789, 792 (Tex.App.—Amarillo 1995, writ denied). A judgment is "rendered" when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk. *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex.1982); *Henry*, 891 S.W.2d at 792. The rendition of the trial court's decision, whether in open court or by official document of the court, is the critical moment when the judgment becomes effective. *Henry*, 891 S.W.2d at 792. "The signature of the trial court upon the writing is merely a ministerial act of the court conforming to the provision of Rule 306a(2) of the Texas Rules of Civil Procedure which calls for 'all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein.'" *Id.* A judgment is "entered" when it is recorded in the minutes of the trial court by a purely ministerial act of the trial court's clerk, thereby providing enduring evidence of the judicial act. *Id.*

■ Thus, entry of a written order is considered a ministerial act reflecting the trial court's action following the rendering of a judgment. *See Dunn v. Dunn,* 439 S.W.2d 830, 832–33 (Tex.1969) (holding oral rendition of divorce constituted final judgment even though judgment was not signed until after spouse's death); *Bakali v. Bakali,* 830 S.W.2d 251, 254 (Tex.App.—Dallas 1992, no writ); *Liberty Mut. Ins. Co. v. Woody,* 640 S.W.2d 718, 721 (Tex. App.—Houston [1st Dist.] 1982, no writ). Yolanda asserts the trial court "rendered" a QDRO dividing Miguel's Railroad Retirement Board benefits in the divorce decree; therefore, signing the Railroad Retirement Order was a ministerial act. As explained below, we disagree.[1]

■ "The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *S & A Rest. Corp. v. Leal,* 892 S.W.2d 855, 858 (Tex.1995) (internal citation omitted); *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, 1041 (1912); *James v. Hubbard,* 21 S.W.3d 558, 561 (Tex.App.—San Antonio 2000, no pet.). To be a judgment, the trial court's oral pronouncement must indicate intent to render a full, final, and complete judgment at the time the words are expressed. *Leal,* 892 S.W.2d at 858. Thus, the words, "[Y]our divorce *is* granted," constitute a rendition of judgment, as do the words, "I'll grant your divorce today." *In re Marriage of Joyner,* 196 S.W.3d 883, 887 (Tex.App.—Texarkana 2006, pet. denied) (emphasis added); *Baize v. Baize,* 93 S.W.3d 197, 200 (Tex.App.—Houston [14th Dist.] 2002, pet. denied).

■ A judge's intention to render judgment in the future is not a present rendition of judgment. *Leal,* 892 S.W.2d at 858 (noting trial court "distinguished between the acts of *approving the settlement* and *rendering judgment* "). Thus, the words, "I *am going to* grant the divorce in this case," and the words, "The Court *will* approve the agreement, and I *will* sign a written order to that effect," standing alone, do not indicate a present rendition of judgment. *James,* 21 S.W.3d at 561 (emphasis added);[2] *In re M.G.F.,* No. 02–07–00241–CV, 2008 WL 4052992, at *3 (Tex.App.—Fort Worth Aug. 28, 2008, no pet.) (mem.op.).[3]

---

1. Much of the case law addressing whether a trial court "rendered" judgment concerns whether the trial judge's oral pronouncement constituted rendering of a judgment. We turn to these cases for guidance.

2. In *James,* the trial court stated, "I am going to grant the divorce in this case. I want a final divorce decree sitting on my desk no later than Wednesday signed off on by both parties or I want it set to enter a judgment three days later." A majority of this court concluded this language "indicate[d] an intent to approve the divorce settlement, but not a clear intent to render a full, final, and complete judgment.... At the hearing, the trial judge never ordered, rendered, or granted, he only told the parties he was 'going' to grant coupled with a request for a 'final' divorce decree to be on his desk by Wednesday. Thus, it is unclear whether the trial judge intended to render judgment orally at the hearing or when he signed the final divorce decree." 21 S.W.3d at 561.

3. In *M.G.F.,* the trial court stated on the record, "The Court will approve the agreement as stated here on the record in open court and approved by both parties in front of the Court, and I find that to be at this time in the best interest of the child, and I will sign a written order to that effect." 2008 WL 4052992, at *2. The court of appeals concluded this language did not constitute a rendition of judgment because the trial court's "use of the words 'will approve' and 'will sign' indicate an intent to render judgment in the future.... The trial court's oral pronouncement of its intention to render judgment in the future could not be a present rendition of judgment." *Id.* at *3.

In determining whether an oral statement by the trial court constitutes a rendition of judgment, we look primarily to the words used by the court. *See Joyner*, 196 S.W.3d at 887–88; *M.G.F.*, 2008 WL 4052992, at *3. Evidence beyond the words of the trial court at the time of the alleged judgment, such as later statements and writings by the court, is not controlling, but such evidence may be considered in ascertaining whether the trial court intended to render judgment at the time of the alleged oral rendition. *See Joyner*, 196 S.W.3d at 887–88; *see also Henry v. Cullum Co., Inc.*, 891 S.W.2d 789, 792–93 (Tex.App.—Amarillo 1995, writ denied) (determining trial court rendered judgment on particular date when (1) trial court orally announced it was granting partial summary judgment, even though there was no reporter's record showing trial court's comments at conclusion of hearing; (2) agreed motion for severance of claims acknowledged oral rendition of partial summary judgment at close of hearing; and (3) docket-sheet notation initialed by trial judge evidenced court's action). The fact that a trial court may believe it rendered judgment on an earlier date is not dispositive. *See Leal*, 892 S.W.2d at 858.

Here, there is no dispute the Agreed Decree of Divorce was a final judgment rendered in the parties' divorce case. The issue—as framed by Yolanda—is whether the trial court also "rendered" a QDRO in the decree. The divorce decree awarded to Miguel all interest in his Railroad Retirement Board pension except that amount specifically awarded to Yolanda in a QDRO "to be entered after this Decree." The divorce decree awarded to Yolanda a portion of the community property interest in Miguel's Railroad Retirement Board pension non-tier I benefits, "if, as, and when received as more particularly specified in the Order Dividing Railroad Retirement Benefits to be entered after this Decree." We believe the language of the decretal paragraph awarding Yolanda her interest in Miguel's Railroad Retirement Board pension does not constitute the rendering of a QDRO. A judge's intention to render a QDRO in the future cannot be a present rendition of a QDRO. *See Leal*, 892 S.W.2d at 858. "The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed." *Id.* In this case, the twice-used language "in the Order Dividing Railroad Retirement Benefits to be entered after this Decree" indicates an intention to render a QDRO in the future.

Accordingly, we conclude the trial court did not render a QDRO in the divorce decree; therefore, the signing of the Railroad Retirement Order fifty-nine days after rendering the divorce decree was not ministerial.

## B. Post–Judgment QDRO

Family Code chapter 9 governs obtaining a QDRO when—as here—the trial court that rendered a final decree of divorce did not enter a qualified domestic relations order or similar order permitting payment of benefits to an alternate payee or other lawful payee. *See* TEX. FAM. CODE ANN. §§ 9.101(a), 9.103 (West 2006), *In re Marriage of Jones*, 154 S.W.3d 225, 228 (Tex.App.—Texarkana 2005, no pet.) (holding section 9.103 "allows creation of a QDRO" "where none exists"). "A suit seeking a QDRO applies to a previously divided pension, retirement plan, or other employee benefit." *DeGroot v. DeGroot*, 260 S.W.3d 658, 665 (Tex.App.—Dallas 2008, no pet.); Tex. Fam. Code § 9.101(b). The court that rendered the divorce decree dividing the property "retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or

similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee." *Id.* § 9.101(a).

Here, the trial court rendered an agreed divorce decree that divided Miguel's Railroad Retirement Board pension, but it did not render or sign a QDRO. Under such circumstances, Texas Family Code sections 9.101. 9.103, and 9.104 "provide for limited, post-judgment jurisdiction that may be invoked only in particular circumstances, rather than for plenary, original jurisdiction." *DeGroot,* 260 S.W.3d at 662. This limited, post-judgment jurisdiction is invoked when "[a] party ... petition[s] [the] court to render a qualified domestic relations order or similar order ..." *Id.* § 9.103; *see also* § 9.102(a) ("A party to a decree of divorce or annulment may petition the court for a qualified domestic relations order or similar order."). Section 9.102 provides the procedure for filing such a petition:

> (b) Except as otherwise provided by this code, a petition under this subchapter is governed by the Texas Rules of Civil Procedure that apply to the filing of an original lawsuit.
>
> (c) Each party whose rights may be affected by the petition is entitled to receive notice by citation and shall be commanded to appear by filing a written answer.
>
> (d) The proceedings shall be conducted in the same manner as civil cases generally.

*Id.* § 9.102(b), (c), (d).

As we concluded above, signing the Railroad Retirement Order was not a ministe-

rial act because the trial court did not "render" a QDRO in the divorce decree. Therefore, Yolanda is required to comply with the provisions of Family Code chapter 9 to obtain a post-judgment QDRO. Yolanda did not file a "petition" that complies with the applicable rules of civil procedure that govern "the filing of an original lawsuit" as required by section 9.102(b). Because Yolanda did not comply with Family Code chapter 9, the Railroad Retirement Order must be reversed.

## CONCLUSION

We sustain Miguel's first issue and conclude Yolanda must comply with the applicable provisions of Family Code chapter 9 in order to obtain a QDRO.[4] We therefore reverse the trial court's Order Dividing Railroad Retirement Benefits and render a denial of Yolanda's "Motion to Enter."

---

4. Because our resolution of the first issue is dispositive, we do not address Miguel's second argument that he did not receive due process or adequate time to defend. *See* Tex. R. App. P. 47.1.