

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00677-CV

Mark Edwin **ALLEN**,
Appellant

v.

Cherelle M. **ALLEN**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-16615
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:   Beth Watkins, Justice

Sitting:   Beth Watkins, Justice
   Liza A. Rodriguez, Justice
   Lori I. Valenzuela, Justice

Delivered and Filed: March 27, 2024

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Mark Edwin Allen challenges the trial court's July 27, 2022 Order Dividing Military Retired Pay and Other Benefits (the DRO). We affirm the DRO in part, reverse it in part, and remand the cause for further proceedings consistent with this opinion.

### BACKGROUND

Mark and appellee Cherelle M. Allen married in 1995 and separated in 2021. During the parties' marriage, Mark served in the United States Armed Forces. It is undisputed that Mark's military service entitles him to receive certain retirement benefits.

During their divorce proceedings, Mark and Cherelle entered into a mediated settlement agreement. On April 27, 2022, the trial court signed an Agreed Final Decree of Divorce memorializing the parties' agreement. The final decree contained the following paragraphs dividing Mark's military retirement benefits:

- IT IS ORDERED AND DECREED that Petitioner, CHERELLE M. ALLEN, is awarded the following as Petitioner's sole and separate property . . . W-6. Husband's Military Retirement. A portion of Husband's <u>military retirement benefits</u>, and any successor Plan thereof, that portion being fifty percent (50%) of the community interest in vested accrued benefit as of the date that this Final Decree of Divorce is signed by the Court, <u>and more particularly defined in a Domestic Relations Order signed by the Court on or after the date this Final Decree of Divorce is signed</u>. This award does not include any portion of Husband's VA disability benefits.[1] (emphasis added)

- IT IS ORDERED AND DECREED that Respondent, MARK EDWIN ALLEN, is awarded the following as Respondent's sole and separate property . . . H-10. Husband's Military Retirement. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of MARK EDWIN ALLEN's service in the United States Army, Army National Guard, and Army Reserves, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of MARK EDWIN ALLEN's past, present, or future employment, except that portion of MARK EDWIN ALLEN's <u>U.S. military retirement</u> that has been awarded in this decree to CHERELLE M. ALLEN <u>as more particularly described in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference</u>.[2] (emphasis added)

Both Mark and his then-attorney signed the final decree, and it is undisputed that Mark agreed to its terms.

On June 3, 2022, Mark filed a "Motion to Sign the Domestic Relations Order." Mark's motion stated that he "believe[d] the proposed Domestic Relations Order accurately reflects the agreements" memorialized in the final decree, and he asked the trial court to "enter the proposed

---

[1] Mark refers to this provision as paragraph W-6.
[2] Mark refers to this provision as paragraph H-10.

Domestic Relations Order, which will be presented to the Court at the time of the hearing." On July 27, 2022, the trial court signed the DRO, as did the parties' attorneys.

At some point after he filed his motion asking the trial court to sign the DRO, Mark obtained new counsel. He filed a motion to vacate the DRO, arguing it was void because the trial court rendered it outside of its plenary power. Specifically, he argued the final decree did not constitute a rendition of judgment on the DRO. Alternatively, he argued the DRO should be modified because its manner of calculating his military retirement pay for the purpose of determining Cherelle's share was contrary to federal law. The trial court denied Mark's motion in a written order.

Mark then filed a second motion to vacate or modify the DRO, which raised the same arguments as his first motion. He added a new argument that the DRO improperly awarded Cherelle "benefits as the Servicemember's Former Spouse Survivor Benefit Plan (SBP) beneficiary" that were not included in the final decree. During the hearing on this motion, Mark's current counsel argued that Mark did not see or approve the DRO before the trial court signed it. Cherelle's counsel, in contrast, represented that it was Mark's responsibility to draft the DRO and noted that he agreed to a final decree "that incorporated the terms of the DRO into the decree[.]" While the appellate record does not contain a written order on Mark's second motion to vacate or modify the DRO, the trial court's judge's notes indicate that it denied that motion. Mark then timely filed a notice of appeal from the DRO.

## ANALYSIS

### *Rendition of the DRO*

In his first issue, Mark argues the DRO is void because the trial court did not render the order within its plenary power. In his second issue, he argues Cherelle did not follow the statutory procedures necessary to obtain a post-plenary power DRO. Cherelle contends Mark's first and

second issues lack merit because the trial court rendered the DRO at the same time it rendered the final decree.

*Standard of Review and Applicable Law*

The purpose of a DRO "is to create or recognize an alternate payee's right to receive all or a portion of the benefits payable to a participant under a retirement plan." *Gow v. Sevener*, No. 05-16-01037-CV, 2017 WL 5897448, at *2 (Tex. App.—Dallas Nov. 30, 2017, no pet.) (mem. op.). The DRO in this case is intended "to direct a military service, rather than a civil pension plan administrator," to make payments out of Mark's retirement benefits to Cherelle. *See Hicks v. Hicks*, 348 S.W.3d 281, 285 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Like a divorce decree, a DRO "is a final, appealable order." *In re Matter of Marriage of Denning & Stokes*, 651 S.W.3d 60, 63 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

"The power to award relief is an essential component of subject-matter jurisdiction[.]" *Save Our Springs All., Inc. v. City of Kyle*, 382 S.W.3d 540, 544 (Tex. App.—Austin 2012, no pet.). Whether a court has subject-matter jurisdiction is a question of law we review de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A trial court generally lacks authority to render additional orders after its plenary power over a final judgment expires. *In re Martinez*, 478 S.W.3d 123, 126 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding). "When a divorce decree does not render a DRO and the decree becomes final and unappealable, the trial court can render a valid DRO only upon the filing of a petition and service in accordance with the Texas Rules of Civil Procedure." *Wellington v. Wellington*, No. 04-16-00707-CV, 2018 WL 521595, at *2 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.); *see also* TEX. FAM. CODE ANN. § 9.102 (procedure for seeking post-judgment DRO).

"A judgment routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry." *Araujo v. Araujo*, 493 S.W.3d 232, 235 (Tex. App.—San Antonio

2016, no pet.) (internal quotation marks omitted). "A judgment is 'rendered' when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk." *Id.* "In order to be an official judgment, the trial court's oral [or written] pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time." *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.).

*Application*

The trial court signed the final decree on April 27, 2022, and neither Mark nor Cherelle filed any post-judgment motions from that decree. The parties agree that under these circumstances, the trial court's plenary power to clarify, modify, or amend the final decree expired 30 days later, on May 27, 2022. Additionally, Cherelle has not disputed Mark's contention that she did not follow the statutory procedures to obtain a post-judgment DRO. The resolution of Mark's first and second issues therefore turns on whether the trial court rendered the DRO at the same time it rendered the divorce decree.

In resolving this question, we must first address Cherelle's assertion that Mark did not satisfy his burden to present a record showing reversible error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam). As Cherelle notes, the appellate record does not contain a reporter's record of either the April 27, 2022 hearing that resulted in the final decree or the September 1, 2022 hearing on Mark's first motion to vacate the DRO. Mark argues he was not required to present a reporter's record of these hearings because they were not evidentiary.

As explained above, a trial court may render judgment either orally or in writing. *See Araujo*, 493 S.W.3d at 235. Rendition, whether oral or written, "is the critical moment when the judgment becomes effective." *Id.*; *see also Wellington*, 2018 WL 521595, at *2–3. For the purposes of reviewing this issue, we will assume without deciding that the written final decree did not

constitute a rendition of judgment on the DRO. Mark must also show, however, that the trial court did not orally render judgment on the DRO during its plenary power. *See Araujo*, 493 S.W.3d at 235; *cf. Christiansen*, 782 S.W.2d at 843. If the trial court orally rendered judgment on the DRO and its terms during its plenary power, its later signing of the written DRO was a purely ministerial act. *See James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.).

The Texas Supreme Court has held that "whether the court pronounced judgment orally and the terms of the pronouncement are questions of fact." *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986). When there is a question about whether a trial court orally rendered judgment during a certain hearing, the evidence necessary to resolve that question comes from the statements the trial court made on the record during the relevant hearing. *See Gamboa*, 383 S.W.3d at 270–71 (holding, based on trial court's statements on the record, that judgment was not rendered at the relevant time). Additionally, "[e]vidence of the judgment actually rendered may come from witness testimony, docket entries, or the trial judge's personal recollection." *In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 110 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding).

Here, the clerk's record shows that the same trial court judge signed both the final decree and the order denying Mark's first motion to vacate the DRO. By rejecting Mark's contention that the DRO was void, the trial court necessarily found, as a matter of fact, that it rendered judgment on the DRO within its plenary power. *See Escobar*, 711 S.W.2d at 232; *see also In re J.P.L.*, 359 S.W.3d 695, 705 (Tex. App.—San Antonio 2011, pet. denied) ("An order signed after the trial court loses plenary power is void.").

In both his first and second motions to vacate the DRO, Mark recognized that without a reporter's record of the April 27, 2022 hearing that resulted in the final decree, it is impossible to determine whether the trial court orally rendered judgment on the DRO during that hearing. *Cf.*

*Gamboa*, 383 S.W.3d at 270. Additionally, without the record of the September 1, 2022 hearing on Mark's first motion to vacate the DRO, we have no way of knowing what evidence and arguments—including evidence of "the trial judge's personal recollection" of the April 27 hearing—persuaded the trial court to deny that motion. *See In re M & O Homebuilders, Inc.*, 516 S.W.3d at 110. Because we do not have the records necessary to determine whether the trial court orally rendered judgment on the DRO during the April 27 hearing, we agree with Cherelle that we must presume the missing records support the trial court's implied factual finding that it rendered the DRO within its plenary power. *See Bailey v. Gallagher*, 348 S.W.3d 322, 325 (Tex. App.—Dallas 2011, pet. denied).[3]

For these reasons, we overrule Mark's first issue. Based on our resolution of Mark's first issue, we need not reach his second issue regarding the requirements to obtain a DRO after a trial court's plenary power expires. *Cf. Wellington*, 2018 WL 521595, at *3 (because trial court rendered DRO within its plenary power, no additional motion, petition, or service was required).

### *DRO's Compliance with Applicable Law*

In his third issue, Mark argues the DRO must be reversed because: (1) it prohibits him from making elections that are permitted by federal law; and (2) the mathematical formulas it uses to calculate his retirement pay—and, by extension, Cherelle's post-divorce share of that pay—are contrary to federal law. Within his challenge to the mathematical formulas, Mark argues the DRO does not make factual findings required by federal law, does not calculate Mark's retirement pay as of the date of the parties' divorce, and contains conflicting provisions.

---

[3] As support for his assertion that the missing records were not necessary, Mark cites authority describing reporter's records of nonevidentiary hearings as "superfluous" and noting Texas courts "generally presume that pretrial hearings are nonevidentiary[.]" *See Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910 (Tex. 2017). This authority is inapposite here. The relevant question in this appeal is not whether the parties presented evidence during the hearings, but whether the trial court's own statements on the record support its finding that it rendered judgment on the DRO within its plenary power. *Cf. Escobar*, 711 S.W.2d at 232; *Gamboa*, 383 S.W.3d at 270.

*Standard of Review*

With regard to both his third and fourth issues, Mark contends "[t]he question for this Court is whether the [DRO] adhered to the applicable state and federal laws governing military retirement and benefits and is pertinent to the construction of a contract which is a question of law for de novo review." However, Mark's third issue does not require us to construe the parties' agreement. Instead, that issue asks us to determine whether the DRO correctly applies the law to the facts of this case. "Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard," including issues regarding the division of marital property. *In re R.H.B.*, 660 S.W.3d 136, 147 (Tex. App.—San Antonio 2022, no pet.) (internal quotation marks omitted). We conclude that Mark's third issue implicates an abuse of discretion standard. *See Gainous v. Gainous*, 219 S.W.3d 97, 103, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (reviewing ruling on motion to clarify/enforce DRO for abuse of discretion); *In re N.T.P.*, 402 S.W.3d 13, 24–25 (Tex. App.—San Antonio 2012, no pet.) (same). In a family law matter, a trial court abuses its discretion if, inter alia, "it clearly fails to analyze and determine the law correctly or applies the law incorrectly to the facts." *Smith v. Karanja*, 546 S.W.3d 734, 738 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

*Prohibition on Future Elections*

A.    Applicable Law

"Members of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay." *Mansell v. Mansell*, 490 U.S. 581, 583 (1989). Retired servicemembers may also be eligible to receive disability benefit payments. *Id.* However, "to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Id.* The United States Supreme

Court has noted that "waivers of retirement pay [in favor of a corresponding amount of disability pay] are common" because disability benefits are exempt from taxation. *Id.* at 583–84.

The Uniformed Services Former Spouses' Protection Act (USFSPA) permits state courts to treat a military retiree's "disposable retired pay payable to a member for pay periods beginning after June 25, 1981" as community property that may be divided in a divorce. *See* 10 U.S.C. § 1408(c)(1); *Mansell*, 490 U.S. at 584–85. The USFSPA defines disposable retired pay as "the total monthly retired pay to which a member is entitled less," inter alia, any amount that is "deducted from the retired pay of [the military retiree] . . . as a result of a waiver of retired pay required by law in order to receive" disability benefits. 10 U.S.C. § 1408(a)(4)(A)(ii); *Howell v. Howell*, 581 U.S. 214, 217 (2017).

The United States Supreme Court has described the USFSPA as "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Mansell*, 490 U.S. at 587. The Court has held that the USFSPA therefore "completely pre-empts the States from treating waived military retirement pay as divisible community property." *Howell*, 581 U.S. at 220. In *Mansell*, the Supreme Court applied this rule even though the divorce decree that divided the military retiree's benefits arose out of the parties' settlement agreement. *Mansell*, 490 U.S. at 585–86, 594–95. In *Howell*, the Supreme Court applied this rule even though the military retiree did not waive his retirement pay in favor of disability benefits until long after the divorce. *Howell*, 581 U.S. at 220–21. Additionally, before the U.S. Supreme Court decided *Howell* and *Mansell*, the Texas Supreme Court held that where federal law allows a military retiree to make an election regarding his benefits, a Texas divorce decree cannot prohibit him from doing so. *Ex parte Burson*, 615 S.W.2d 192, 196 (Tex. 1981).

B.    Application

The DRO in this case prohibits Mark from merging his military retirement pay "with any other benefit, pension or other entitlement," exercising any waivers of his military retirement pay that "hav[e] the effect of reducing [his] disposable retired military pay," or "otherwise tak[ing] or forgo[ing] any action if it would have the effect of reducing or limiting [Cherelle's] right to receive [her] full separate property share of" his military retirement pay. These provisions are contrary to the USFSPA, the U.S. Supreme Court's holdings in *Howell* and *Mansell*, and the Texas Supreme Court's holding in *Burson*. *See* 10 U.S.C. § 1408(a)(4)(A)(ii); *Howell*, 581 U.S. at 220–23; *Mansell*, 490 U.S. at 594–95; *Burson*, 615 S.W.2d at 196. Accordingly, we must reverse the DRO as to those provisions and remand it to the trial court with instructions to delete them. *See Freeman v. Freeman*, 133 S.W.3d 277, 280–81 (Tex. App.—San Antonio 2003, no pet.).

*Calculation of Mark's Retirement Pay and Required Fact Findings*

A.    Applicable Law

Congress has promulgated mathematical formulas that shall be used to compute a servicemember's retirement pay. *See generally, e.g.*, 10 U.S.C. §§ 1407, 12739. The USFSPA provides that for purposes of post-divorce division of a servicemember's retirement pay, "the total monthly retired pay to which the member is entitled shall be" computed based on the applicable formula "on the date of the decree of divorce, dissolution, annulment, or legal separation[.]" 10 U.S.C. § 1408(a)(4)(B)(i), (ii). "[A] state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." *Ridgway v. Ridgway*, 454 U.S. 46, 55 (1981).

B.    Application

The DRO provides that Cherelle's share of Mark's active-duty retirement pay is "to be computed by multiplying 50% times a fraction, the numerator of which is 280 months of marriage

during [Mark's] creditable military service,[4] divided by [Mark's] total number of months of creditable military service." Cherelle's share of Mark's reserve-duty retirement pay is "to be computed by multiplying 50% times a fraction, the numerator of which is the total number of Reserve retirement points earned during the period of the marriage . . . divided by [Mark's] total number of Reserve retirement points earned." Stated differently, the DRO calculates Cherelle's share of Mark's active-duty and reserve retirement pay, but it does not calculate or set out any formulas by which to calculate the retirement pay from which that share will be taken.

To comply with the USFSPA, the DRO was required to calculate "the amount of [disposable] retired pay to which [Mark] would have been entitled" at the time of the divorce. 10 U.S.C. § 1408(a)(4)(A), (B); *see also* 10 U.S.C. § 1408(d) ("[T]he Secretary shall make payments . . . from the disposable retired pay of the member to the spouse or former spouse . . . in the amount of disposable retired pay specifically provided for in the court order."). Additionally, it was required to use formulas promulgated by Congress to reach that number. *See* 10 U.S.C. § 1408(a)(4)(B). We agree with Mark that the DRO does not apply the required statutory formulas to calculate either his active-duty or his reserve retirement pay. *See id.*; *see also generally* 10 U.S.C. § 1407 (establishing various retirement pay formulas based on servicemember's "high-three average"); 10 U.S.C. § 12739(a) (computing retirement pay based on product of base pay under sections 1406 or 1407 and "2 ½ percent of the years of service credited to that person under [10 U.S.C. § 12733]"). Additionally, the DRO does not specify that Mark's active-duty retirement must be calculated as of the date of the parties' divorce. *See* 10 U.S.C. § 1408(a)(4)(B). Because

---

[4] In his brief, Mark contends that he retired from the armed services in June of 2007 and the "'number of months of marriage during [Mark's] creditable military service' should be 140 months," not 280 months. Because Mark did not raise this complaint in either his first or second motion to modify the DRO, we do not address it. TEX. R. APP. P. 33.1(a). However, nothing in our opinion precludes Mark from presenting evidence on this point on remand.

the DRO does not use the mathematical formulas required by Congress, we must reverse it. *See id.*; *Ridgway*, 454 U.S. at 55; *see also Mansell*, 490 U.S. at 587.

As Mark noted in his motions to modify the DRO, determining which federal statutory formula applies to a given situation "requires a lot of 'jumping around' Title 10" of the United States Code. Arriving at the correct result after this "jumping around" requires the resolution of numerous fact issues about the length and nature of the servicemember's time in the military. *See, e.g.*, 10 U.S.C. § 1408(a)(4)(B) (providing that applicable statutory scheme is determined by the circumstances of the military retiree); *see also* 10 U.S.C. § 1407(c) (retired pay base for servicemembers who joined after September 7, 1980 for "regular service"); 10 U.S.C. § 1407(d) (retired pay base for servicemembers who joined after September 7, 1980 for "nonregular service"); 10 U.S.C. § 7314 (years of service required for retirement from enlisted service in the Army); 10 U.S.C. § 7325 (computation of years of service in the Army); 10 U.S.C. § 12731 (age and service requirements for retirement); 10 U.S.C. § 12733 (computation of retired pay); 10 U.S.C. § 12739 (computation of retired pay). Mark's motions to modify the DRO and his appellate briefing, both of which contain representations about factual matters such as the length of his service and the number of reserve retirement points he earned, emphasize the necessity of this fact-finding.

In the DRO, the trial court explicitly found that the parties' marriage ended on April 27, 2022, that Mark served in the military for "22 years and 2 months or more" during the marriage, and that Mark was "not on active duty at the time of" the rendition of the DRO. It also implicitly found that Mark served in both active and reserve-duty roles. It did not, however, make any findings about Mark's age, his "high-three average," his retired pay base, his creditable service points (including reserve retirement points), the precise number of years he served, the bases upon which he was entitled to receive miliary retirement, or other factors relevant to the computation of

his retirement pay. *See, e.g.*, 10 U.S.C. § 1408(a)(4)(B)(i), (ii) (providing for different outcomes based on whether the servicemember is entitled to retirement pay for regular or nonregular service). Accordingly, the trial court did not make the findings required by federal law to calculate Mark's retirement pay as of the date of divorce. *See, e.g.*, *id.* Because we "cannot act as a fact-finder," *see Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590 (Tex. App.—Dallas 2007, no pet.), we agree with Mark that the scope of our remand must include instructions to conduct additional fact-finding.

Finally, Mark argues that Texas Supreme Court precedent requires the calculation of his retirement pay to be based on his "number of months employed under the [retirement] plan at the time of divorce" as a matter of Texas state law. *See Berry v. Berry*, 647 S.W.2d 945, 946–47 (Tex. 1983). Because we have already concluded that the calculation of Mark's retirement pay must be reversed and remanded as a matter of federal law, we need not reach this state-law issue.[5] *See* TEX. R. APP. P. 47.1. For the same reason, we need not reach Mark's argument that the DRO as currently written contains two separate and conflicting formulas. *See id.*

For these reasons, we reverse the DRO and remand it to the trial court for further proceedings to: (1) delete the DRO's paragraphs regarding the calculation of Cherelle's share of Mark's retirement pay; (2) conduct the fact-finding necessary to determine which of the federal statutory formulas must be used to calculate Mark's retirement pay for the purposes of determining Cherelle's post-divorce share; and (3) enter an amended DRO that: (a) complies with applicable federal law, including Congress's requirement that Mark's retirement pay be calculated as of the date of the parties' divorce; (b) specifies the correct formula or formulas to be used to compute

---

[5] We note, moreover, that Mark did not make this state-law argument below. *See* TEX. R. APP. P. 33.1(a)(1); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 510 (Tex. 2018) (Texas courts generally do not consider complaints not raised in trial court).

Mark's retirement pay; and (c) uses the results of those formulas to determine Cherelle's post-divorce share. *See generally* 10 U.S.C. §§ 1407, 1408, 12739.

We sustain Mark's third issue.

### *Award of SBP Benefits*

In his fourth issue, Mark challenges the portion of the DRO that orders him to name Cherelle as a former spouse beneficiary under the Armed Forces Survivor Benefit Plan.

### *Standard of Review and Applicable Law*

The SBP program permits "a member of the armed forces who is entitled to retirement pay [to] elect to provide an annuity to a former spouse, payable to the former spouse upon the member's death." *In re A.E.R.*, No. 02-05-00057-CV, 2006 WL 349695, at *3 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (mem. op.) (per curiam); *see also* 10 U.S.C. §§ 1448, 1450. Mark argues the DRO's award of SBP benefits to Cherelle imposed an obligation on him that was not contemplated by the final decree.

Because this issue touches on whether the DRO is consistent with the parties' agreement as memorialized in the final decree, it presents a question of contract interpretation that we review de novo. *See Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.); *see also McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) (marital property agreement incorporated into divorce decree is "governed by the law of contracts"). "When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument. Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763–64 (Tex. 2018) (internal quotation marks and footnotes omitted).

*Application*

Paragraph W-6 of the final decree specifies that Cherelle was to receive a portion of Mark's "military retirement benefits, and any successor Plan thereof . . . and more particularly defined in a [DRO]." Paragraph H-10 of the final decree specifies that Mark was to receive "[a]ll sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of [Mark's military service] . . . except that portion of [Mark's] U.S. military retirement that has been awarded in this decree to [Cherelle] as more particularly specified in the [DRO] signed coincident with this decree and incorporated verbatim in it by reference." As noted above, it is undisputed that Mark agreed to these terms.

Mark argues this language in the final decree divides his "military retirement *pay* and not his SBP." (emphasis added). We disagree. The plain language of the agreed final degree divides Mark's "military retirement *benefits*" (emphasis added) and his "U.S. military retirement." The decree does not contain any language limiting those terms to retirement pay, and we may not add such a limitation where the parties did not. *See In re Davenport*, 522 S.W.3d 452, 456–58 (Tex. 2017) (orig. proceeding); *see also URI*, 543 S.W.3d at 763–64.

Moreover, we must presume the parties intended to give effect to the provision of the final decree that expressly incorporates the DRO into its terms. *See, e.g.*, *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, pet. denied). "When a document is incorporated into another by reference, both instruments must be read and construed together." *St. David's Healthcare P'ship, LP v. Fuller*, 627 S.W.3d 707, 712 (Tex. App.—Austin 2021, pet. dism'd).[6]

---

[6] Mark cites *St. David's Healthcare* for the proposition that when a document is incorporated by reference, the parties "must be able to ascertain the document and have notice of its terms." Because he contends he never saw or approved the DRO before the trial court signed it, he argues the necessary notice is lacking here. In *St. David's Healthcare*, the court of appeals construed an employee agreement which noted the appellee's employment was "subject to [the

Here, the DRO provides that its terms were intended to divide Mark's "military retired pay *and other military benefits payable in retirement* under Texas law" (emphasis added), and it includes the SBP benefits in that division.

Mark notes that in *Hicks* and *A.E.R.*, two of our sister courts held that an award, in a DRO, of SBP benefits to a former spouse was not included within a divorce decree's division of military retirement benefits. *See Hicks*, 348 S.W.3d at 287–88; *A.E.R.*, 2006 WL 349695, at *3. But neither *Hicks* nor *A.E.R.* involved a challenge to a DRO that was expressly incorporated into a divorce decree. *See Hicks*, 348 S.W.3d at 284 (court "review[ed] the DRO as a separate order and not as part of the agreed divorce decree"); *A.E.R.*, 2006 WL 349695, at *1 (decree itself described DRO as "a separate order"). The *Hicks* court specifically noted its holding was based on the fact that "the DRO is not part of the parties' agreement[.]" *Hicks*, 348 S.W.3d at 288. Because the rules of contract interpretation require us to give effect to the parties' expressed intention to incorporate the DRO into the final decree, *Hicks* and *A.E.R.* are distinguishable from this case, and we decline to apply their holdings to these facts.

We overrule Mark's fourth issue.

## CONCLUSION

We reverse the DRO as to the provisions that: (1) prohibit Mark from making elections that may affect Cherelle's right to receive retirement pay; and (2) set out the mathematical formulas to be used to calculate Cherelle's share of Mark's retirement pay. We remand the DRO to the trial court with instructions to:

---

appellant employer's] policies and procedures applicable to employees." *St. David's Healthcare*, 627 S.W.3d at 711. The court concluded the agreement's "subject to" language did not incorporate a separate arbitration policy that was not specifically mentioned in the agreement. *Id.* at 712–13. Here, in contrast, the DRO is expressly incorporated into the final decree. Accordingly, the language of the final decree "evidences an intent by the parties to incorporate" the DRO. *Id.* at 712.

(1) delete the provisions that prohibit Mark from merging his military retirement pay "with any other benefit, pension or other entitlement," exercising any waivers of his military retirement pay that "hav[e] the effect of reducing [his] disposable retired military pay," or "otherwise tak[ing] or forgo[ing] any action if it would have the effect of reducing or limiting [Cherelle's] right to receive [her] full separate property share of" his military retirement pay;

(2) delete the paragraphs of the DRO that calculate Cherelle's share of Mark's retirement pay;

(3) conduct the additional fact-finding necessary to determine which of the federal statutory formulas must be used to calculate Mark's retirement pay for the purposes of determining Cherelle's share; and

(4) enter an amended DRO that: (a) specifies the formula(s) and other requirements promulgated by federal law, including Congress's requirement that Mark's retirement pay be calculated as of the date of the parties' divorce; and (b) applies those formulas to determine both Mark's retirement pay and Cherelle's share of that pay.

We affirm the remainder of the DRO, including its award of SBP benefits to Cherelle.

Beth Watkins, Justice